Frank L. GORDON and Marion V. Gordon, Plaintiffs,

v.

LOEW'S INCORPORATED, a Delaware corporation; Paramount Film Distributing Corporation, a Delaware corporation; Paramount Pictures, Inc., a New York corporation; RKO Radio Pictures, Inc., a Delaware corporation; Twentieth Century-Fox Film Corporation, a New York corporation; Twentieth Century-Fox Film Corporation, a Delaware corporation; Warner Bros. Pictures Distributing Corporation, a New York corporation; Columbia Pictures Corporation, a New York corporation; Universal Film Exchanges, Inc., a Delaware corporation; and United Artists Corporation, a Delaware corporation, Defendants.

Francis J. CURTIS, Trustee in Bankruptcy of B.P.R. Corporation, an Illinois corporation, Plaintiff,

v.

LOEW'S INCORPORATED, etc., et al., Defendants.

John C. GORDON, Helen Gordon, and Joseph Gordon, Plaintiffs,

v.

LOEW'S INCORPORATED, etc., et al., Defendants.

Civ. A. Nos. 202–55, 203–55, 204–55.

United States District Court
D. New Jersey.
Dec. 14, 1956.

Stein, Stein & Engel, Jersey City, N. J., for plaintiffs, by Richard M. Orlikoff, Chicago, Ill.

Toner, Crowley, Woelper & Vanderbilt, Newark, N. J., for defendants, by Willard G. Woelper, Newark, N. J.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for Twentieth Century-Fox Film Corp., by Stanley Godofsky, New York City.

Philip J. O'Brien, Jr., New York City, for RKO Teleradio Pictures, Inc.

Marvin H. Ginsky, New York City, for Paramount Film Distributing Corp.

WORTENDYKE, District Judge.

Each of these cases is an action for treble damages under Section 4 of the Clayton Act, 15 U.S.C.A. § 15. In No. 202–55, the plaintiffs are alleged to have been the holders of all of the outstanding stock of The Northwest Theater Company, a corporation organized under the laws of Illinois, which had operated the Wicker Park motion picture theater in Chicago from April 15, 1929 to May 14, 1949, but which was dissolved on February 16, 1950. The plaintiffs in No. 204–55 claim to have been owners of all the stock of another Illinois corporation, known as Gordon Brothers Theater Company, which operated another motion picture theater (Chopin Theater) from September 1, 1922 to January 1, 1947, in Chicago, and which was dissolved on January 25, 1949. Civil action No. 203–55 is brought by the Trustee in Bankruptcy of B. P. R. Corporation, a body corporate of the State of Illinois, which had been the lessee and operator of three motion picture theaters in Chicago for periods of time between March 1, 1944 and June 10, 1951. Defendants in all three actions were originally the same.

Paramount Pictures, Inc. and Paramount Film Distributing Corporation (hereinafter respectively referred to as Paramount Pictures and Paramount Film), Warner Bros. Picture Distributing Corporation (hereinafter referred to as Warner), RKO Radio Pictures Inc. (hereinafter referred to as RKO), Twentieth Century-Fox Film Corp. (N.Y.) and Twentieth Century-Fox Film Corp. (Delaware) (hereinafter respectively referred to as Fox-N.Y. and Fox-Del.), Loew's Incorporated (hereinafter referred to as Loew's), Columbia Pictures Corp. (hereinafter referred to as Columbia), and Universal Film Exchanges, Inc. (hereinafter referred to as Universal), are charged as distributors and producers of motion pictures, while United Artists Corp. (hereinafter referred to as U.A.), is charged as a distributor thereof. These defendants are collectively referred to in each complaint as "defendant distributors". It is also alleged that Paramount Pictures was dissolved January 1, 1950 and that its production and distribution facilities were transferred to Paramount Film, which is accordingly charged as a successor corporation to Paramount Pictures. Similarly, Fox-N.Y. is alleged to have been dissolved in September 1952, and the complaint charges that its production and distribution facilities were transferred to Fox-Del., which is charged as a successor corporation to Fox-N.Y. Four other corporations, viz. Balaban & Katz Corp., Warner Bros. Theaters, Inc., Warner Bros. Circuit Management Corp. and Essaness Theaters Corporation, although not made parties defendant to any of these actions, are alleged in the

complaint in each to have been co-conspirators with the named defendants.

In cases numbered 202–55 and 204–55 (hereinafter referred to as the Gordon cases), the relationship of the plaintiffs to the causes of action which are alleged to have accrued to the respective now-dissolved theater corporations in which they were stockholders is set forth in each complaint in the following language:

"By reason of the unlawful acts of defendants herein complained of," (the dissolved theater corporation) "and the plaintiffs were subject to great loss and damage during the period from" (January 1, 1935 to May 14, 1949 in C–202–55, and January 1, 1935 to January 1, 1947 in C–204–55) "both in loss of revenue from the operation of" (named theater) "and in the diminution of the value of the leasehold interest which" (the theater company held in the premises) "and in the diminution of the value of other capital assets of" (the theater company). "Plaintiffs are unable to determine the full extent of the loss of revenue suffered by" (the theater company) "and themselves at the present time, but plaintiffs will be able to ascertain such damage after an examination of the books and records of the defendants and their co-conspirators. Plaintiffs are entitled, under the laws of the United States, to recover from the defendants threefold the actual damage suffered by them."

The corresponding allegations of the complaint in C–203–55 (the case brought by Curtis, Trustee) charge that, by reason of the unlawful acts complained of, the bankrupt corporation suffered damage from March 1, 1944 to June 10, 1951 in loss of revenue from the operation of the three theaters which it had operated and in the diminution of the value of its other capital assets; such losses exceeding $300,000 in amount. It is therefore charged that the plaintiff Trustee in bankruptcy "is entitled, under the laws

of the United States, to recover from the defendants threefold the actual damages suffered by the B. P. R. Corporation." I must conclude that the phrase "laws of the United States" used in each of the complaints as supporting the alleged right of recovery, refers to Section 4 of the Clayton Act, 15 U.S.C.A. § 15, which reads as follows:

"§ 15. Suits by persons injured; amount of recovery.

"Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Upon the respective motions of the defendants Fox-N.Y. and Paramount Pictures, each of the actions was dismissed as to those defendants for improper venue. This Court has jurisdiction over the remaining defendants, all of whom have filed answers in each of the actions.

In the Gordon cases, all of the presently remaining defendants in each action have moved for summary judgment in their favor upon the ground that the claims set forth by the plaintiffs in their complaints have abated. In all three of the captioned actions, motions for summary judgment have been made by the defendants Paramount Film and RKO upon the asserted ground that all of the claims set forth in each of the complaints which accrued prior to March 4, 1949, have been barred by the Statute of Limitations of the State of Illinois, or, in the event that this Court holds that the Illinois statute does not govern, that these claims are barred by the New Jersey Statute of Limitations. Finally, Fox-Del. has moved, in all three of the captioned actions, for judgment on the pleadings, upon the ground that Fox-Del. has only been in existence since

1952, a date substantially subsequent to the last date upon which any of the alleged anti-trust violations were committed by any of the defendants.

Motion for Summary Judgment Grounded upon Alleged Abatement in Gordon Actions (202–55 and 204–55).

Defendants in 202–55 and 204–55 move for summary judgment, pursuant to Rule 56(b), Fed.Rules Civ.Proc., 28 U.S.C.A., upon the stated ground that the claims asserted in the complaint in each case have abated. This contention is erected upon the provisions of Section 157.94 of Chapter 32 of the Illinois Revised Statutes 1955 which provides:

"The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by the decree of a court of equity when the court has not liquidated the assets and business of the corporation, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name."

■ Each of the corporations of which the plaintiffs in these two cases were stockholders was a creature of the laws of the State of Illinois, and the respective rights of the corporation and its stockholders in each instance are governed by the same laws. Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147. Each of these cases was commenced on March 3, 1955 by the filing of the complaint in this Court, which date was more than two years after the date of dissolution of each of the Illinois corporations to which the alleged cause of action originally accrued. Defendants therefore contend that neither of the corporations, nor the shareholders thereof, may maintain these actions because each cause of action alleged, whether it be considered derivative from the corporation or acquired as a chose in action by the shareholders from the corporation, had abated by reason of the failure to commence the action within two years after the date of the dissolution of the corporation. While all parties concede that each of these actions would be barred if brought in the State of Illinois, by reason of the two-year Statute of Limitations of that State, defendants contend that the above-quoted section of the Illinois corporation laws is not a statute of limitations but rather a deferment or modification of the common law abatement which, in the absence of such a statute, would preclude the assertion, after dissolution, by the corporation or its shareholders, of a cause of action which had accrued to the corporation before dissolution. In this connection, movants emphasize particularly what they assert is the plain language of the section to the effect that the dissolution of a corporation shall not impair any remedy available to its shareholders for any right or claim existing prior to the dissolution provided an action thereon is commenced within two years after the date of the dissolution.

Neither of the original complaints in the Gordon actions expressly sets forth the manner in which the cause or causes of action alleged was acquired by the (individual) plaintiffs. However, in the briefs submitted and upon the oral argument upon the present motions, the plaintiffs asserted that their causes of action were derived either by operation of law, in consequence of their status as sole stockholders of the dissolved corporation, or by assignment from the corporation. During the argument the Court suggested that the complaints be amended to set forth either or both of

the foregoing theories, and leave was accordingly granted for that purpose. Meanwhile, the argument was heard and the briefs considered upon the assumption that the complaints had already included the suggested particularization. With respect to the theory of assignment of the cause of action alleged to have accrued prior to its dissolution from the theater corporation to the holders of all of its stock, defendants concede that such a cause of action would be assignable. See Momand v. Universal Film Exchange, 1 Cir., 1948, 172 F.2d 37.

Pursuant to leave granted, each of the complaints in the two Gordon cases has been amended to set forth with greater particularity the relationship of the plaintiffs in the case to their dissolved theater corporation and to the alleged cause of action for treble damages which accrued thereto. In each complaint paragraph 2 is amended to allege (a) that by operation of Illinois law plaintiffs became the owners and holders of all of the assets, including causes of action, which their theater corporation owned on the date of its dissolution; and (b) that plaintiffs have succeeded by assignment to the said causes of action which their theater corporation owned on the date of its dissolution. The amendment to paragraph 60 of the complaint in each case substitutes for the original language thereof the allegation that the plaintiffs have become entitled to the damages sought "as the successors to and the assignees of the assets, claims, and causes of action" which their theater corporation owned on the date of its dissolution.·

 We are therefore required to determine plaintiffs' right to maintain these actions by construing section 157.94 (hereinafter called 94) of the Illinois statute. As was pointed out in Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, at page 127, 58 S.Ct. 125, at page 128, 82 L.Ed. 147:

"How long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power [citing cases.] The circumstances under which the power shall be exercised and the extent to which it shall be carried are matters of state policy, to be decided by the state Legislature. There is nothing in the Federal Constitution which operates to restrain a state from terminating absolutely and unconditionally the existence of a state-created corporation, if that be authorized by the statute under which the corporation has been organized. * * * The power to take the long step of putting an end to the corporate existence of a state-created corporation without limitation, connotes the power to take the shorter one of putting an end to it with such limitations as the Legislature sees fit to annex. * * * The state law permits such proceedings to be instituted on behalf of a dissolved corporation within two years; * * *. After two years, no proceeding may be initiated on behalf of the corporation in either state or federal courts, but such proceedings as have been instituted during that period in any of these courts may be prosecuted to completion. [Citing Singer & Talcott [Stone] Co. v. Hutchinson, 176 Ill. 48, 51 N.E. 622.] The right of resort to the courts of the state, and to those of the nation having jurisdiction, both in respect to the initiation of proceedings and the completion of proceedings already initiated, so far as Illinois law is concerned, stands upon an exact parity."

It is apparent from the foregoing language that this Court must turn to the decisions of the Courts of Illinois for an interpretation of the meaning and effect of the statutory section invoked by movants in these cases. United States v. United States Vanadium Corporation, 10 Cir., 230 F.2d 646. The Supreme Court has accepted the rule expressed in American Exchange Bank v. Mitchell, 179 Ill.App. 612, that, "after a

corporation is dissolved, it is incapable of maintaining an action; and that all such actions pending at the time of dissolution abate, in the absence of a statute to the contrary." Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U.S. 257, 259, 47 S.Ct. 391, 71 L.Ed. 634. While "a time-honored feature of the corporate device is that a corporate entity may be utterly dead for most purposes, yet have enough life remaining to litigate its actions" if a statute of the State of its incorporation so provides, nevertheless "unless the statutory terms are observed, * * * the consequences of total dissolution attach, and * * * the actions abate." Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 69 S.Ct. 762, 763, 93 L.Ed. 931; United States v. P. F. Collier & Son Corp., 7 Cir., 208 F.2d 936, 40 A.L. R.2d 1389. I therefore conclude that, upon the expiration of two years next succeeding the date of dissolution of each of the theater corporations in which the plaintiffs were stockholders, the remedy, if any, which had been available to that corporation for treble damages under the anti-trust laws abated. Such an abatement would obviously operate upon any right of action which might have accrued to the corporation *before,* but which its stockholders might attempt to assert in its behalf more than two years *after* its dissolution. Plaintiffs, however, claim that their rights of action in these cases were acquired by operation of law or through assignment contemporaneously with or prior to the dissolution of the corporation in which they were stockholders. Assuming such a method and time of acquisition, how long does the remedy for such a cause of action persist in the plaintiffs in view of the language of section 94?

In the Chicago Title case, supra, which was decided in 1937, the Supreme Court was construing sections 14 and 79 of the Illinois Business Corporation Act of 1919. These two sections will be found in the footnote.[1] In the opinion in 302 U.S. at page 125, 58 S.Ct. at page 127, Mr. Justice Sutherland, speaking for the Court, says:

> "Sections 14 and 79 of the Illinois statute (Smith-Hurd Ill.Stats. c. 32, § 157.94 note) seem plain enough on their face; but, if any doubt as to their meaning and effect would otherwise exist, that doubt has been set at rest by the decisions of the Illinois appellate courts."

He adds that, before these sections were enacted, it was the general rule that, following its dissolution, a corporation was incapable of maintaining an action and that all such actions pending at the time of dissolution abated in the absence of a statute to the contrary. He concludes, 302 U.S. at page 125, 58 S.Ct. at page 127, that:

> "The state decisions following the enactment of these sections made it clear that this general rule still remains in force in Illinois except for the specific modifications in respect of time and circumstance set forth in sections 14 and 79."

Section 14 of the 1919 Act extended for two years after dissolution the capacity of the corporation to collect debts due to it and to sell and convey its prop-

---

1. " '§ 14. All corporations organized under the laws of this State, whose powers may have expired by limitation or otherwise, shall continue their corporate capacity for two years for the purpose only of collecting debts due such corporation and selling and conveying the property and effects thereof. *Such corporations shall use their respective names for such purposes and shall be capable of prosecuting and defending all suits at law or in equity.* * * *' [Ill.Rev.Stat.1931, c. 32, § 14].

" '§ 79. The dissolution, for any cause whatever, of any corporation, shall not take away or impair any remedy given against such corporation, its officers, or stockholders, for any liabilities incurred previous to its dissolution, if suit therefor is brought and service of process had *within two years after such dissolution.*' [Ill.Rev.Stat.1931, c. 32, § 79]."

Chicago Title Case, 302 U.S. at pages 122 and 134, 58 S.Ct. at pages 126 and 131.

erty. Section 79 of the same Act preserved (provided suit thereon were brought within two years after dissolution) "any remedy given against" the corporation, its officers or stockholders, for "any liabilities incurred previous to its dissolution." Section 79 was "not strictly a statute of limitation but * * * a conditional limitation" upon a creditor's right of action against a corporation which has been dissolved. Sarelas v. McCue & Co., 1937, 291 Ill.App. 540, 10 N.E.2d 700, 702, citing Dukes v. Harrison & Reidy, 270 Ill.App. 372; Consolidated Coal Co. of St. Louis v. Flynn Coal Co., 274 Ill.App. 405; Bishop v. Chicago Rys. Co., 303 Ill. 273, 135 N.E. 439. The facts in Sarelas, as we glean them from the opinion, may be summarized as follows: The suit was in equity in behalf of the plaintiff and all other creditors of the defendant corporation to recover from the stockholders claimed unpaid stock subscriptions, and from the directors damages because of their alleged assent to the incurring of an indebtedness by the corporation in excess of its capital, in violation of Section 23 of the Illinois Corporation Act of 1919. Defendants pleaded in bar, inter alia, that the suit against the stockholders was not brought within two years after the dissolution of the corporation, as required by Section 79 of the Act. The Appellate Court affirmed the trial Court in dismissing the action upon the pleaded defense,[2] holding, 10 N.E. 2d at page 703, that "Where a corporation is dissolved, suit must be brought and summons served within two years after such dissolution, as provided in section 79 of the act of 1919 * * *."

We learn from Chicago Riding Club for Use of Klein v. Avery, 1940, 305 Ill.App. 419, 27 N.E.2d 636, 639, that at the time of that decision there was in force in Illinois the Business Corporation Act of 1933 which specifically repealed the Act of 1919. With reference to Section 94, the Court noted that "suits may be instituted against a corporation, its directors or shareholders, at any time within two years after the dissolution of the corporation, but the statute is silent and no provision is made which authorizes a dissolved corporation to maintain any form of action whatever after its dissolution." In the Riding Club case, the Illinois Court of Appeals pointed out that the Illinois Courts had not been called upon to determine whether, after dissolution, a corporation could maintain any form of action, in view of the silence of the statute with respect to such a right. However, the Court reviewed Billiard Table Manufacturing Corp. v. First-Tyler Bank & Trust Co., a decision of the District Court for the Northern District of West Virginia, reported in 16 F.Supp. 990, which construed various sections of the Illinois Business Corporations Act of 1933. At page 640 of 27 N.E.2d in the opinion in the Riding Club case, the Court of Appeals points out (in the language of the Billiard Table case) that before the 1933 Act " 'An Illinois corporation had the right and power to collect debts due it and to maintain suits in its corporate name for the same for a period of two years after its date of dissolution,' " but that this power was withdrawn by the Legislature in its enactment of the 1933 Act, which provided that " 'Upon application of any interested party, the assets of any corporation undergoing involuntary liquidation may be collected by the appointment of receivers to collect the same pending dissolution.' "

In 1941 Section 94 of the 1933 Act was amended to read as it presently does. The principal respect in which the language of the Section was amended is to be found in the substitution of the phrase "remedy available to or against such corporation, its directors, or shareholders" for the phrase "remedy given

---

**2.** The directors pleaded failure to bring the suit against them within five years after the accrual of plaintiffs' claim, as required by the statute of limitations applicable to such a cause of action. The Court of Appeals held that the five year statute of limitations was not applicable.

against such corporation, its officers, or stockholders."

The same Illinois Appellate Court which decided the Sarelas case in 1937, and construed the 1933 Business Corporation Act, construed Section 94 after its 1941 revision, in Walden Home Builders, Inc., v. Schmit, 1945, 326 Ill. App. 386, 62 N.E.2d 11. Walden was also an appeal from an order dismissing an action by a corporation for want of capacity to sue because of its dissolution and the provisions of Section 94. It appears from the opinion of the Appellate Court in Walden that in 1937 (prior to the 1941 amendment of the Corporation Act) plaintiff corporation had paid to the defendants a sum of money for the furnishing of certain heating equipment which was never delivered. The action was commenced May 22, 1942 and service was effected upon the defendants on June 27, 1942. Defendants moved to dismiss because the action was not commenced within two years after the dissolution of the plaintiff corporation as required by Section 94 of the Act as amended in 1941. The Appellate Court held that the trial Court erred in granting defendant's motion to dismiss. At page 12 of 62 N.E.2d, the Appellate Court said:

"At the time of plaintiff's dissolution [May 24, 1940] there was no statute preserving any remedies on behalf of a dissolved corporation. Section 94, relied upon by defendants in their motion to dismiss, had no relation to actions by or in behalf of a dissolved corporation. It purported only to preserve remedies against the corporation, its directors and stockholders. Taking the complaint as true, as we must on the motion to dismiss, plaintiff had a meritorious cause of action, and defendants were indebted to it prior to its dissolution. This liability of the defendants did not terminate with the dissolution of the corporation, for in the absence of statutory provision creditors and stockholders of a dissolved corporation may bring suit in equity to recover corporate assets. [Citing cases.] The amendment of 1941, therefore, did not create a new liability or cause of action against the defendants. It did not revive a cause of action which had lapsed, * * *. The amendment related solely to the remedy to enforce a liability against defendants which had never ceased to exist. * * * To my mind, the statute is one which merely provides a different method of winding up and administering the affairs of dissolved corporations. It creates no causes of action and deprives no one of property. I reach this conclusion because it appears to be well settled that when a corporation is dissolved, its assets do not vanish and its debtors are not absolved or released. * * * The amendment of 1941 supplied an omission in the corporation act of 1933 and restored to dissolved corporations a right which had existed under former statutes. No valid reason has been suggested why the amendment should not apply to corporations previously dissolved."

In the Riding Club case, the Illinois Appellate Court quotes the following significant language from the opinion in Levinson v. Home Bank & Trust Co., 337 Ill. 241, 169 N.E. 193, 194:

" 'It is a well-settled rule of statutory interpretation that, where the language used is plain and certain, it must be given effect by the courts. The province of the courts is not to legislate but to interpret. We cannot read out of the statute words which the Legislature has placed therein, any more than we can read into the statute words which are not within the manifest intention of the Legislature as determined by the statute itself.' "

█ I can conceive of no reason why the language of Section 94 of the Illinois Business Corporation law as it presently exists requires a less literal interpretation than that which, I am con-.

vinced, was accorded to the language of the section prior to the 1941 amendment. As the section stood in the 1933 Act it deprived a plaintiff of his remedy *against* a corporation, its officers or stockholders unless suit therefor was brought and service of process had within two years after the dissolution of the corporation. It seems obvious that the 1941 amendment merely included remedies available *to* the corporation, its directors and shareholders, with the remedies given *against* the corporation, its officers or stockholders, and *made no change in the requirement for the commencement of suit within two years after dissolution.* Accordingly, I must give to the present language of Section 94 its plain meaning, and in doing so I am brought to the conclusion, in the face of the allegations of the amended complaints, that each of the theater corporations therein respectively referred to had, before its dissolution, a remedy against the defendants under Section 4 of the Clayton Act, which remedy persisted for two years after the dissolution of the corporation, but is no longer available either to the corporation or to its shareholders, the present plaintiffs.

In their opposition to the present motions, plaintiffs rely principally upon Brooks v. Saloy, 334 Ill.App. 93, 79 N.E. 2d 97. That case was a decision in 1948 of the same Appellate Court which decided Walden. It was an action by former stockholders of a dissolved Illinois corporation to remove a cloud on title to real estate, which had been owned by the corporation prior to its dissolution. The defendants moved to dismiss the complaint in the trial Court for want of equity. The motion prevailed below but the decree was reversed on appeal. Although Section 94 of the Illinois Corporation Act is referred to in the Court's discussion of the effect of the dissolution of their corporation upon the right, title and interest of the plaintiff stockholders in the real estate described in the complaint, no issue was raised respecting the effect of Section 94 upon the right of the plaintiffs to

maintain the action. The case is authority for the quite elementary principle that the act of dissolution of a corporation works a change in the form of the interest of its stockholders by destroying the stock and substituting the thing which the stock represented, viz., a legal interest in the property of the corporation. The Court found that the plaintiff stockholders owned the legal title to the land in question as tenants in common, and because the allegations of the complaint (which were deemed to be admitted for the purpose of the motion to dismiss) disclosed "such a clear case of gross inadequacy of price as to shock the conscience of a court of equity", that aspect, together with irregularities apparent in the proceedings leading to the sale of the property under execution presented ample equity to withstand the motion to dismiss upon the ground urged.

■ Because, as reiterated in Brooks, the status of the stockholders of a dissolved corporation changes from that of stockholders to that of tenants in common of the corporate assets, plaintiffs in the case at bar argue that, despite the provisions of Section 94 of the Illinois Corporation Act, the plaintiffs Gordon have succeeded to the remedies which their dissolved corporations had by reason of the alleged anti-trust violations and, therefore, as tenants in common of these choses in action, they are entitled to maintain the present actions. I cannot agree with this contention in view of my interpretation of the Illinois statute and my understanding of the Illinois decisions which have interpreted it and its predecessors. Nor am I persuaded that the plaintiffs may maintain this action qua assignees of the causes of action or remedies which are alleged to have been available to the corporation before dissolution. Where a cause of action is assigned by a corporation to its sole stockholders on the effective date of dissolution, subsequent to lengthy dissolution proceedings (see Chap. 32, Sec. 157.75 through Sec. 157.-81, Illinois Revised Statutes), such cause

of action is surely for a "remedy available to * * `*` such corporation * * * prior to such dissolution" within the meaning of Sec. 94. Whether the claim passed to the stockholders by assignment or operation of law, action thereon must be commenced within two years of dissolution.

I discern in the legislation under consideration a statement of the public policy of the State of Illinois that remedies available to a corporation or its shareholders prior to its dissolution may be enforced only within two years after such dissolution, irrespective of the identity or status of the party seeking such enforcement. I conclude, therefore, that the motions for summary judgment in the Gordon cases must prevail. It therefore becomes unnecessary for me to consider the other motions in these (Gordon) cases.

### Motion of Fox-Del. for Judgment on the Pleadings (C–203–55).

Defendant Fox-Del. has moved the Court for judgment on the pleadings in both Gordon cases and in the Curtis case. We have disposed of the Gordon cases by summary judgment in favor of all of the defendants. We proceed to consider the attack of Fox-Del. upon the complaint in the Curtis case.

It appears that B. P. R. Corporation, of which Curtis is Trustee in Bankruptcy, was also organized under the laws of Illinois and, as lessee, operated three theaters in the City of Chicago during the period March 1, 1944 to June 10, 1951. The complaint in the Curtis case charges that from March 1, 1944 to November 1, 1947 these theaters were not permitted to exhibit motion pictures until at least 73 days after the conclusion of their first-run Loop exhibition and from November 1, 1947 to June 10, 1951, were required to compete against theaters with which they were not substantially competitive, in consequence whereof the corporation is alleged to have been damaged in the amount of $300,000 and seeks treble damages under the Clayton Act.

The present action was commenced on March 3, 1955.

■ The motion for judgment on the pleadings is appropriately made pursuant to Rule 12(c) of the Rules of Civil Procedure. Plaintiff has presented matters outside of the pleadings in response to this motion and they have been considered by the Court. Accordingly, the motion must be treated as one for summary judgment pursuant to Rule 56. Such a motion may not be granted unless there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

It is contended by Fox-Del. that plaintiff cannot recover against that defendant because the original complaint charged that the anti-trust violations upon which the plaintiff's cause of action depends took place within the period from March 1, 1944 to June 10, 1951, and that the defendant Fox-Del. did not come into existence until 1952.[3]

Plaintiff elaborated, by amendment, his allegations with respect to Fox-Del. to which that defendant answered.[4]

---

3. Paragraph 8 of the original complaint reads as follows:

"8. Some time in 1952, the defendant corporation Twentieth Century-Fox Film Corporation, a New York corporation, was dissolved and its production and distribution facilities were transferred to the defendant Twentieth Century-Fox Film Corporation, a Delaware corporation. Fox-Delaware is the successor corporation of Fox and since 1952 Fox-Delaware has engaged in the activities set forth in paragraph 6 hereof."

4. Pursuant to leave of Court granted herein, paragraph 8 of the complaint was amended to read as follows:

"8. Some time in September, 1952, pursuant to a consent decree entered in the District Court of the United States for the Southern District of New York, in the cause entitled 'United States of America v. Paramount Pictures, Inc., et al', (Civil Action Number 87–273 [85 F.Supp. 881]) in which suit Twentieth Century-Fox Film Corporation, a New York corporation, was named as a defendant, said

Defendant Fox-Del. admitted the factual allegations of paragraph 8 of the complaint as amended, but denied the conclusions contained therein; and pleaded that the complaint as amended failed to state a claim upon which relief could be granted as to Fox-Del.; and that the claims asserted in the complaint as amended are barred by section 4B of the Clayton Act, 15 U.S.C.A. § 15b. The plea of the Federal Statute of Limitations, 15 U.S.C.A. § 15b, cannot stand because the amendment to the complaint relates back to the date of the original complaint, Rule 15(c), which was filed before section 4B of the Clayton Act, by its terms, became effective.

A photostatic copy of the agreement of September 24, 1952 between Fox-N.Y. and Fox-Del., referred to in paragraph 8 of the complaint as amended, and authorized by the consent judgment in United States of America v. Paramount Pictures, Inc. et al. (S.D.N.Y. C.87–273), is annexed to plaintiff's answering brief on the present motion. Also annexed to said answering brief is a copy of the application for registration of securities submitted by Fox-Del. to the Securities and Exchange Commission in connection with the corporation's contemplated stock issue, wherein the applicant states that the plan of reorganization in compliance with the aforesaid consent judgment "will effect divorcement * * * by the transfer by (Fox-N. Y.) of all of its other assets to the registrant" and that "after consummation of reorganization of (Fox-N.Y.) the (Fox-N.Y.) stockholders will own one share of the registrant's common stock and one share of National's common stock in place of each share of the Fox common stock formerly owned." (By the terms of the same plan, Nation-

Twentieth Century-Fox Film Corporation, a New York corporation, was dissolved and its production and distribution facilities were transferred to the defendant Twentieth Century-Fox Film Corporation, a Delaware corporation. Fox-Del. is the successor corporation of Twentieth Century-Fox Film Corporation, a New York corporation, and since 1952 Fox-Delaware has engaged in the activities set forth in paragraph 5 above. Pursuant to the afore-described consent decree, Twentieth Century-Fox Film Corporation, a New York corporation, effected and carried through a plan of reorganization as integral parts of which:

(a) Said corporation transferred its production and distribution assets to the defendant Fox-Delaware;

(b) An agreement dated September 24, 1952, was entered into between said Fox-New York (therein called 'Fox'), said Fox-Delaware (therein called 'Pictures') and National Theaters, Inc., a Delaware corporation, (therein called 'Theaters'), whereby Fox-Delaware, among other things, agreed that it would '(b) assume and agree to pay all liabilities of Fox, actual or contingent, including the expenses of dissolution of Fox and (c) assume and agree to perform all obligations of Fox, but only so long as and to the extent that such obligations and liabilities continue to exist as valid and subsisting obligations and liabilities of and enforceable against Fox and subject to all defenses now or hereafter available to Fox.';

(c) The shares of the common stock of Fox-Delaware were issued to Fox-New York;

(d) Fox-New York transferred its theater holding interests to said National Theaters, Inc., in consideration of the issuance by said National Theaters, Inc. of its common stock to Fox-New York;

(e) Fox-New York then distributed to the holders of its common stock one share of stock in Fox-Delaware and one share of stock in National Theaters, Inc. in exchange for and upon surrender of each share of Fox-New York common stock owned;

(f) After such exchange of stock, Fox-New York was dissolved.

"Fox-Delaware is a mere continuation of Fox-New York using the same name, carrying on the same business, with the exception of the ownership and operation of theaters, and having, at its inception, the same shareholders who were the shareholders of Fox-New York immediately prior to the dissolution of that corporation. The officers and directors of Fox-Delaware at its inception were, with minor changes in the office of assistant secretaries and with the change of one director, identical with the officers and directors of Fox-New York immediately prior to the dissolution of that corporation."

al was the transferee of the "domestic exhibition interests" of Fox-N.Y.)

Relying upon Leonia Amusement Corp. v. Loew's, Inc., D.C.S.D.N.Y.1953, 117 F.Supp. 747, Fox-Del. on its present motion contends that plaintiff cannot recover against it for the causes alleged in the complaint because said defendant did not come into existence after plaintiff's cause or causes of action, if any, against Fox-N.Y. and the other defendants, had accrued. Plaintiff emphatically disagrees with movant's contention and asserts that not only by reason of its successorship to Fox-N.Y., but also because of its express assumption of the liabilities of that corporation, Fox-Del. is answerable to the plaintiff directly for the causes alleged in the complaint. Plaintiff also contends that the Leonia Amusement case relied upon by the moving defendant is not authority for the contention which said defendant here makes, in view of the limitation expressed in District Judge Ryan's opinion in Leonia Amusement, 117 F.Supp. at page 761, which reads as follows:

"It is not determined whether, by reason of receipt of assets or by an expressed assumption, they may eventually be held liable for the acts of their predecessor corporation if such liability is established."

■ Movant, in turn, points out that because the present action was dismissed as to Fox-N.Y., the plaintiff cannot recover against Fox-N.Y., and, therefore, is precluded from recovery against Fox-Del. because its contractual undertaking to assume obligations of Fox-N.Y. is qualified in the written contract of assumption by the phrase "but only so long as and to the extent that such obligations and liabilities continue to exist as valid and subsisting obligations and liabilities of and enforceable against Fox * * *." The dismissal of this action as to Fox-N.Y. was, as will appear from the recital in this Court's order of November 23, 1955, grounded upon the determination that this Court lacked jurisdiction of the person of that defendant and that the venue of this

Court was improper with respect to that defendant. Since, therefore, the dismissal of this action as to Fox-N.Y. did not constitute an adjudication upon the merits, the present movant can ill be heard to contend that the cause of action presently asserted against movant is not maintainable against Fox-N.Y.

■ There remains the question whether the cause of action alleged in the complaint against the present movant is maintainable under the facts and allegations. I must answer this question in the affirmative.

In Leonia Amusement the Court was trying only " 'The defense under the statute of limitations' ". 117 F.Supp. at page 749. From the excerpt from Judge Ryan's opinion quoted at p. 9 of the present movant's brief, is omitted what appears to me to be a significant sentence, viz.:

"The statute of limitations had run against the plaintiffs as to everyone not a party to United States v. Paramount Pictures by September 1, 1941."

The plaintiff in Leonia Amusement had consented to the dismissal as to the RKO defendants and the Court dismissed as to the two Paramount corporations on the grounds that at the time of their organization and acquisition of assets of the dissolved Paramount corporation in 1949, they could not be subject to recovery due to the running of the statute of limitations in favor of their predecessor. Moreover, Judge Ryan expressly disclaimed any opinion respecting the contention based upon the factual situation involved in the present motion, 117 F.Supp. at page 761.

As pointed out by Judge Phillips of the Tenth Circuit in West Texas Refining & Development Co. v. Commissioner of Internal Revenue, 1933, 68 F. 2d 77, at page 81:

"The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the

transferor. [Citing authorities.] To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) Where the transaction amounts to a consolidation or merger of the corporations; (3) Where the purchasing corporation is merely a continuation of the selling corporation; and (4) Where the transaction is entered into voluntarily in order to escape liability for such debts. [Citing authorities.]"

The present movant seems to fall within the category described in the first of the exceptions to the general rule above quoted, i. e., it expressly agreed to assume the debts of Fox-N.Y. While the West Texas case was a review of the Board of Tax Appeals, assessing an additional tax in accordance with the determination of the Commissioner of Internal Revenue, among the authorities cited in support of the general rule and its exceptions are cases involving other matters than those of taxes. I deem the principles indicated applicable here. The motion of Fox-Del. for judgment on the pleadings in the Curtis case is accordingly denied.

### Motion of Paramount Film and RKO for Summary Judgment (C–203–55)

Defendants Paramount Film and RKO move for summary judgment in both Gordon cases and in the Curtis case "on the ground that the applicable Statute of Limitations of the State of Illinois and of the State of New Jersey is a complete defense to all claims asserted by these plaintiffs or in the alternative dismissing all claims for damages which accrued against them (the moving defendants) prior to March 4, 1949 on the ground that the applicable statute of limitations of the State of New Jersey is a complete defense and bar to all claims asserted by plaintiff(s) which accrued prior to March 4, 1949." At the commencement of the argument the motion of Paramount Film was withdrawn thus leaving RKO as the sole movant.

Both of the Gordon cases have already been dismissed against all defendants for the reasons hereinabove stated.

As pointed out above, the four year statute of limitations upon treble damage suits under the Clayton Act, 15 U.S. C.A. § 15b, had not become effective at the time this action was commenced. Its provisions are, therefore, inapplicable to the case at bar.

Movant first contends that since the actions complained of arose in Illinois, in addition to the fact that B. P. R. Corporation was a corporation of that State, the applicable Illinois statute of limitations should be applied. Both sides concede that if this were the case, plaintiff's action would be barred. But on this point the law is clear; this action is governed by the Statute of Limitations of New Jersey, the State in which the action is pending. Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912, certiorari denied 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704; Momand v. Universal Film Exchange, D.C.Mass.1942, 43 F.Supp. 996, 1008; Bertha Building Corp. v. National Theaters Corp., D.C.N.Y.1956, 140 F.Supp. 909; Schiffman Bros. v. Texas Co., 7 Cir., 1952, 196 F.2d 695.

In the absence of a finding that the Illinois statute applies, this moving defendant would apply to this action the provisions of Sections 2A:14–1 and 2A:-14–10(b) of the New Jersey Statutes, N.J.S.A., which respectively read as follows:

"2A:14–1. 6 years

"Every action at law for trespass to real property, and any tortious injury to real or personal property, for taking, detaining or converting personal property, for replevin of goods or chattels, for any tortious

injury to the rights of another not stated in sections 2A:14–2 and 2A:-14–3 of this title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued."

"2A:14–10. 2 years and 1 year; actions on penal statutes

"All actions at law brought for any forfeiture upon any penal statute made or to be made, shall be commenced within the periods of time herein prescribed:

\* \* \* \* \* \*

"b. Within 2 years next after the offense committed or to be committed against the statute, or cause of action accrued, when the benefit of the forfeiture and the action therefor is or shall be limited or given to the party aggrieved; \* \* \* "

The impact of the New Jersey Statute of Limitations upon an action under Section 4 of the Clayton Act for treble damages brought in this District by a foreign against a domestic corporation, has been explored by Judge Hartshorne of this Court in Florida Wholesale Drug, Inc., v. Ronson Art Metal Works, Inc., 1953, 110 F.Supp. 573. In that case, Judge Hartshorne points out that although the cause of action arose in Florida the Statute of Limitations of New Jersey, the forum, applied and since the action was not barred by the Statute of the forum it could be maintained even though barred in the State where the cause of action arose. (Citing Restatement of Conflict of Laws, Sec. 604). After a comprehensive review of governing authorities, Judge Hartshorne reached the conclusion, with which I concur, that a private anti-trust suit under the Clayton Act, such as the case at bar, is not a suit for a penalty or forfeiture but rather an action on the

case governed by the six-year New Jersey Statute of Limitations as in H. J. Jaeger Research Laboratories v. Radio Corp. of America, 3 Cir., 1937, 90 F.2d 826; Bluefields S. S. Co. v. United Fruit Co., 3 Cir., 1917, 243 F. 1. The present action, therefore, is one at law for a tortious injury to the rights of another and is governed by Section 2A:14–1 of the Statutes of New Jersey, N.J.S.A., which requires that it be commenced within six years next after the cause of such action shall have accrued. Movant admits that from the face of the complaint it appears that the cause of action in the case at bar had accrued by June 10, 1951. Therefore, the first alternative of defendant RKO's motion, that all claims asserted by this plaintiff be dismissed, must be denied.

We now consider the second alternative, that all claims accrued against RKO prior to March 4, 1949 by the plaintiff in the Curtis case, be dismissed. This action was commenced March 3, 1955. The violations of the anti-trust laws for which the plaintiff seeks treble damages under Section 4 of the Clayton Act extended over a period which, according to the allegations of the complaint insofar as they relate to the defendant RKO, commenced November 1, 1947 and terminated June 10, 1951. In opposing this motion the plaintiff relies upon 15 U.S.C.A. § 16 which, as of the date of the institution of the present action, read in part as follows:

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the anti-trust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

It is conceded by all parties that while the case of United States v. Paramount

Pictures, Inc.,[5] was pending as to the present moving defendant, RKO, the running of the New Jersey six-year statute of limitations was suspended.

Plaintiff Curtis contends that United States v. Paramount Pictures terminated as to RKO between November 8, 1948 and March 30, 1949 and rests his contention in this respect upon Leonia Amusement Corp. v. Loew's, Inc., D.C. S.D.N.Y.1953, 117 F.Supp. 747.

In the Leonia Amusement case, the New York six-year statute of limitations was applied and the plaintiffs contended that United States v. Paramount Pictures was pending from July 20, 1938 until at least October 16, 1950, thereby suspending the New York statute during that period. In that case Judge Ryan pointed out, 117 F.Supp. at page 761, that "Pursuant to the judgment [in United States v. Paramount Pictures] of November 8, 1948, RKO Pictures Corporation and RKO Theaters Corporation were organized on November 20, 1949 and acquired certain assets of Radio-Keith-Orpheum Corporation, which was then dissolved", and that the plaintiffs in the Leonia Amusement case had consented to the dismissal of the RKO defendants. Judge Ryan ruled that until the stockholders of the respective defendants had approved the reorganization plans required by the language of the consent decree (in United States v. Paramount Pictures) there was not a termination of the litigation with respect to that defendant whose stockholders had not so approved. Plaintiff argues further that RKO is not entitled to summary judgment because it has not revealed the date upon which the stockholders of Radio-Keith-Orpheum Corpo-

ration consented to the proposed reorganization of RKO defendant. In an affidavit presented in support of the present motion it appears that by order in the Paramount case, dated January 18, 1950, the litigation was severed and terminated as against the RKO defendants "as of the 8th day of November, 1948" upon a representation that the proposed reorganization had been approved by the stockholders of Radio-Keith-Orpheum Corporation prior to March 30, 1949. Plaintiff points out that the effective date of stockholder approval of the proposed reorganization is nowhere indicated and contends that if it is prior to March 4, 1949, the instant motion should prevail, while if it is subsequent to that date, the motion should be denied.

The moving defendant points out that it has been judicially determined that United States v. Paramount Pictures terminated as to RKO on November 8, 1948, the date upon which the defendant entered into a consent decree in that litigation. Grengs v. Twentieth Century-Fox Film Corp., 7 Cir., 1956, 232 F.2d 325, certiorari denied 352 U.S. 871, 77 S.Ct. 96. In accordance with Section 16 of Title 15 U.S.C.A., the New Jersey six-year statute of limitations began to run against the plaintiff herein on November 8, 1948.

Inasmuch as this action was commenced on March 3, 1955, all claims which accrued to plaintiff prior to March 4, 1949, are barred by the New Jersey Statute of Limitations. To that extent, the motion of RKO for summary judgment will be granted.

Orders may be presented in accordance with the foregoing opinion.

5. D.C.S.D.N.Y.1946, 66 F.Supp. 323; D.C. S.D.N.Y.1947, 70 F.Supp. 53; 1947, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; D.C.S.D.N.Y.1950, 85 F.Supp. 881; 1950, 339 U.S. 974, 70 S.Ct. 1032, 94 L.Ed. 1380; Loew's, Inc., v. United States, 1950, 340 U.S. 857, 71 S.Ct. 69, 95 L.Ed. 627.