Tillie Brooks, Administratrix of Estate of Hattie Shapiro, Deceased et al., Appellants, v. John Saloy et al., Appellees.

Gen. No. 44,338.

94

Opinion filed April 12, 1948.   Rehearing denied April 23, 1948.   Released for publication April 23, 1948.

BERNARD ALLEN FRIED, of Chicago, for appellants.

MILTON M. ADELMAN and JAMES W. MILNE, both of Chicago, for appellees.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiffs filed their complaint April 24, 1946, in the circuit court of Cook county to remove a cloud on the

title to certain real estate, for partition thereof, accounting and other relief. Defendants filed their written motion to strike the complaint, and upon a hearing the court sustained the motion and dismissed the complaint for want of equity. The questions presented upon this appeal are the right of plaintiffs to bring the action and the sufficiency of the pleading for equitable relief.

The complaint, as amended, alleges *inter alia* that on and prior to March 23, 1935, the Clifton Garage Corporation was the owner in fee simple of certain real estate in the County of Cook, which it held subject to a trust deed securing a principal indebtedness of $130,000; that default having occurred in the payment of principal and interest, the trustee filed its complaint to foreclose the lien of the trust deed; that while the foreclosure suit was pending the county collector filed a complaint in the circuit court against the Clifton Garage Corporation for the appointment of a receiver under the "Skarda Act" for the purpose of collecting the rents to apply on delinquent taxes amounting approximately to $8,500; that the premises were then in the possession of a receiver appointed in the mortgage foreclosure proceeding; that on March 23, 1935, the corporation filed a petition in the United States District Court for the Northern District of Illinois under the provisions of Section 77B of the Bankruptcy Act; that in the bankruptcy proceeding a restraining order was entered restraining the county collector from prosecuting his suit and directing the delivery of possession of the real estate to a temporary trustee appointed by the bankruptcy court; that in the bankruptcy proceeding a plan of reorganization was confirmed which provided, among other things, for the organization of a new corporation with a capitalization of $127,500 evidenced by 1275 shares of stock; that the outstanding first mortgage bonds in the aggregate principal balance of $115,000 were to be surrendered

and the owners in lieu thereof to be given one share of stock for each $100 bond; that the former stockholders of the Clifton Garage Corporation were to surrender their stock and to receive 125 shares of the stock of the new corporation; that the new corporation, known as the Mammoth Garage Corporation, came into legal existence November 27, 1935; that on November 15, 1937, the real estate owned by the old corporation was appraised and the appraisal, filed in the Federal court, showed a fair physical value of $80,000 and a fair economic value of $42,975; that the property was improved with a two-story and basement garage with floors of reinforced concrete, freight elevators and steam heating system, built on several lots with an area of 17,000 square feet; that the final decree entered in the Federal court proceedings provided, among other things, that the Mammoth Garage Corporation, being the new corporation, was liable for general real estate taxes for the years 1929 to 1935, amounting to $17,000, and allowed attorney's fees to Louis A. Smith, in the sum of $3,034; that the Federal court trustee surrendered possession of the premises to the new corporation on July 21, 1937; that on October 10, 1937, the county collector, no longer restrained by any injunction of the Federal court, filed its petition for the appointment of a receiver to collect the income of the garage property under the provisions of the "Skarda Act," and on October 28, 1937, a "Skarda" receiver was appointed, who took possession and collected rents; that there was thenceforth no income remaining to the corporation to pay any of its debts or obligations; that the receiver in the tax foreclosure proceeding leased the premises at $500 per month to defendant John Saloy; that on April 26, 1939, while the property was in the possession of the "Skarda" receiver, Attorney Louis A. Smith filed suit in the municipal court to recover $3,260, being the amount allowed him in the Federal court for his services together with costs and

interest; that judgment was entered in said suit for $3,104 against the Mammoth Garage Corporation; that on August 28, 1939, Attorney Smith caused a writ of execution to issue and a levy made on the right, title and interest of the Mammoth Garage Corporation in and to the real estate described in the complaint, and on October 4, 1939, the bailiff returned the writ of execution satisfied in full; that the sale of the real estate on the execution was to Attorney Smith for the sum of $3,247.75, and on April 10, 1941, the bailiff executed and delivered a deed to the premises to the defendant Del Vecchio, who had an assignment of the certificate of sale from Smith; that thereupon defendant Del Vecchio conveyed a half interest to the property to defendant Carson and later a half interest in the property to the defendant Trust Company of Chicago as trustee under Trust Number 3829; that the property described in the complaint has a merchantable value conservatively upwards of $70,000; that the levy and deed purported to be made by the bailiff of the municipal court upon the real estate was faulty and void and of no effect because the bailiff never made any demand upon the Mammoth Garage Corporation prior to making said levy nor attempt to do so, and because the bailiff did not offer said premises in separate tracts, though the amount of said judgment could have been satisfied 'from a sale of any one of the three lots described; that on January 12, 1943, defendants Del Vecchio and Carson filed their petition in the tax foreclosure proceeding, praying that the receiver be dismissed, and offered to pay $350 a month to the county treasurer to apply against taxes, as a result of which an order was entered discharging the receiver; that the premises can be rented at the present time for $1,000 a month; that the claim of Smith had been fully paid out of rents, issues and profits of the property; that on January 6, 1944, by a decree of court on the complaint of the attorney general of the State of Illi-

nois, the Mammoth Garage Corporation was dissolved; that as a result of such dissolution the title of the property to the corporation descended and became vested in its stockholders in common; that Hattie Shapiro died owning 25 shares of the common stock of the Mammoth Garage Corporation; that the individual plaintiffs are her heirs-at-law and next of kin and as tenants in common are the owners of an undivided 25/1275 interest in the property; that this proceeding is brought on behalf of all the stockholders of the corporation with a view to quieting the title, to sell the property and distribute the proceeds pro rata among the stockholders; that defendants Del Vecchio and Carson entered into a conspiracy to acquire the property for their own use and benefit and deprive the holders of the stock of their rightful interest in the property; that pursuant to the conspiracy they caused to be filed certain proceedings for the purpose of foreclosing the lien of general real estate taxes; that the only defendants named in said tax foreclosure proceeding were Del Vecchio, Carson and Mammoth Garage Corporation, (the latter, though named, was not served with summons); that in said tax foreclosure proceeding a decree was entered on April 9, 1943, finding that defendant Del Vecchio and Carson and the Mammoth Garage Corporation have an interest in the real estate described; that on April 20, 1943, an amendment to the decree of foreclosure was entered striking out said finding and inserting in lieu thereof: ''Mammoth Garage Corporation has no interest in the following described real estate''; that neither the Mammoth Garage Corporation nor the stockholders of the corporation were made parties nor served with any notice or summons in said tax foreclosure proceeding; that pursuant to the decree of foreclosure in the tax proceedings, a sale was had on April 5, 1943; that defendant Esther Grodsky bid the sum of $7,000 in full payment of all unpaid real estate taxes, interest, and penalties

thereon, up to and including the year 1940; that on April 20, 1943, said sale was approved; that pursuant to the conspiracy entered into no certificate of sale was ever recorded in the office of the recorder of deeds, nor at the expiration of two years from the date of said sale was any deed put on record, nor did the holder of the certificate of sale comply with the statute in respect to obtaining a deed as a result of said tax sale; that the tax receiver collected $20,000 during his receivership and satisfied in full all tax delinquencies for the years in question; and that plaintiffs tender to defendants such sums, if any, the court may find due them together with interest at the legal rate. The motion to strike admitted for the purpose the facts well pleaded and every reasonable inference to be drawn therefrom.

The corporation was dissolved January 6, 1944, and ceased legally to exist thereafter, except that the Corporation Act, ch. 32, par. 157.94, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 32.096], provides that such dissolution "shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name."

██ ██ Whatever assets such a dissolved corporation has belong to the stockholders of the corporation subject to the rights of creditors or legal claims of third parties. If the individual plaintiffs may be regarded stockholders as heirs of Hattie Shapiro, then they have an interest in the real estate held by the corporation at the time of its dissolution, and must be treated as tenants in common with all other stockholders.

In *Wheeler v. Pullman Iron & Steel Co.*, 143 Ill. 197, at p. 204, the court said:

"In respect of trade corporations, independently of statutory provision, and notwithstanding the dissolution of the corporation, its assets belong to those who contributed to its capital and for whom it stood as representative in the business in which it was engaged, and are treated in equity as a trust fund, to be administered for the benefit of the *bona fide* holders of stock, subject to the just claims of creditors of the corporation."

To the same effect, *Walden Home Builders, Inc. v. Schmit*, 326 Ill. App. 386.

In *Gulf Lines Connecting R. R. v. Golconda Northern Ry.*, 290 Ill. 384, where the title to land was involved, the court said at p. 392:

"Even in case of a dissolution of a corporation, the common law doctrine that upon such dissolution there remains no owner of the property is obsolete, and the assets of the corporation will be administered, subject to the rights of creditors, for the benefit of the stockholders."

In American Jurisprudence, Vol. 13, § 412, it is stated:

" . . . the act of dissolution of a corporation works a change in the form of the interests of its members by destroying the stock and substituting the thing which the stock represented—that is, a legal interest in the property—and leaves the members to such a division of this."

To the same effect, *Lauman v. Lebanon Valley R. Co.*, 30 Pa. 42.

In *Stearns Coal & Lumber Co. v. VanWinkle*, (C. C. A.), 221 Fed. 590 (certiorari denied by U. S. Supreme Court, 241 U. S. 670), the corporation ceased to exist

January, 1895, and no steps were taken to wind up the corporation. In 1907, the corporation began an ejectment suit against the defendants. The suit was dismissed because of the lack of corporate existence. In December, 1910, several stockholders of the dissolved corporation brought the same kind of an action on behalf of themselves and all other stockholders.

At p. 593, it was said:

"The right of the stockholders to maintain this action depends upon the nature of the title which they, as former stockholders, had in the corporate assets at the time this suit was begun. On the termination of the corporate life the stockholders were at least the equitable owners of its assets, including the real estate in question. . . . The controlling question, therefore, is whether at the time this suit was instituted the corporate stockholders held the legal title to the real interests in question."

and at p. 596 said:

" . . . we see no escape from the conclusion that the stockholders owned the legal title to the land in question as tenants in common. . . . For the purposes of mere recovery of the corporate property from an adversary party there was no imperative necessity for the appointment of a receiver or trustee to act as representative plaintiff. The suit was in fact representative."

In *Pewabic Mining Co.. v. Mason*, 145 U. S. 349, it was held on the termination of the mining company its property belonged to the different stockholders as tenants in common.

The facts alleged in the complaint, if true, disclose such a glaring case of gross inadequacy of price as to shock the conscience of a court of equity. *Flemming v. Tallerday*, 289 Ill. 508; *Rogers v. Barton*, 386 Ill. 244. That, together with the irregularity appear-

ing of record in the proceedings leading to the sale under the execution, where it appears no demand was made prior to the levy and sale, and the further irregularity in the sale under the tax foreclosure decree and the deed issued thereunder, when the statute, par. 744, sec. 263, ch. 120 [Jones Ill. Stats. Ann. 119.760], which sets forth the requirements to be followed by a purchaser at a tax sale to entitle him to a deed was not complied with, permits a court of equity taking jurisdiction for the purpose of allowing redemption, removing a cloud on the title, and partition among the tenants in common.

In *Rogers v. Barton,* it was said at p. 251:

"The irregularity of service of the demand, the excessiveness of the levy, coupled with the gross inadequacy of the sale furnish sufficient basis for action by a court of equity."

In *Barnes v. Freed,* 342 Ill. 73, where it was alleged no demand for payment of the execution had been made by the bailiff, and that the property, worth $20,000, was sold for $917.59, the court said:

" . . . where there is gross inadequacy of price and the officer executing the process fails to call upon defendant and demand payment or in any manner serve his execution or give notice of the execution to the defendant, the court is warranted in finding that there has been an attempt not simply to obtain payment of the debt but to secure an unfair advantage by obtaining property for a sum much less than its value. *Miller v. McAlister, supra; Bullen v. Dawson,* 139 Ill. 633; *Hobson v. McCambridge, supra.*"

In *Magnes v. Tobias,* 337 Ill. 605, at p. 611, it was said:

"It has been uniformly held by this court that where property has been sold at judicial sale for a grossly inadequate price, even slight circumstances indicating

unfairness or fraud will furnish sufficient grounds for equitable interference.''

The gross inadequacy of price and the irregularities attending the levy and sale were matters of record created by Attorney Smith, and as assignees, defendants Del Vecchio and Carson stood in no better position than Smith. Defendant Grodsky, who purchased and obtained a certificate of sale and deed in the tax foreclosure suit, is also bound by the irregularity charged in the complaint as the failure to comply with the statute to entitle her to a tax deed; especially so in light of the charge in the complaint that it was a part of the conspiracy to withhold recording of the certificate of sale and deed in the tax foreclosure proceeding so that the corporation and its stockholders, officers and directors would not know of its existence. While the complaint is not definite in which particulars defendant Grodsky failed to comply with the statute (presumably par. 744, sec. 263, ch. 120, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 119.760]) and does not comply with rule 13 of the Supreme Court respecting the citation of the statute relied upon, the complaint should not for this reason be dismissed for want of equity. The court could well direct the complainant to file a more specific complaint.

In *Miller v. McAlister,* 197 Ill. 72, at p. 85, it was said:

''Where the plaintiff in the judgment . . . becomes the purchaser at the execution sale, he is responsible for, and is supposed to be cognizant of, all irregularities and errors both in the judgment and in the proceedings under the execution.''

In *Block v. Hooper,* 318 Ill. 182, it was said at p. 187 :

''The sale of one's property to satisfy his debt to another is a drastic remedy and the provisions of the law by which it is brought about must be strictly complied

with, and where this is not done, courts will, where the price is inadequate, allow redemption upon equitable terms though the period of redemption has expired.''

Whether Tillie Brooks, as administratrix, is a proper party in this cause may depend upon proof to be made as to whether Hattie Shapiro died leaving claims against the estate to be satisfied. If that should appear upon the hearing, then in a partition proceeding we see no reason why, under the partition statute, the court cannot direct the proceeds distributable to the individual plaintiffs be first subjected to the payment of such debts. *Hurlbut v. Talbot,* 273 Ill. 299, at p. 305.

The complaint in our judgment states a sufficient cause of action requiring an answer by the defendants, and the chancellor erred in dismissing the complaint for want of equity.

Accordingly, the decree of the circuit court is reversed and the cause remanded with directions to overrule the motion to strike the complaint and direct an answer to be filed by defendants.

*Reversed and remanded with directions.*

NIEMEYER, P. J., and O'CONNOR, J., concur.