629 F.2d 1183
 CANADIAN ACE BREWING CO. et al., Plaintiffs-Appellants,
v.
JOSEPH SCHLITZ BREWING CO., Defendant-Appellee.
Ida G. SCHULTZ, Marcelle G. Keeshin, and Allen H. Schultz,
in their individual capacities,
Plaintiffs-Appellants, Cross-Appellees,
v.
ANHEUSER-BUSCH, INC., Defendant-Appellee, Cross-Appellant.
 Nos. 79-2046, 79-2237 and 79-2275.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 22, 1980.
Decided May 21, 1980.
As Amended May 22, 1980.
 
 Allen H. Schultz, Chicago, Ill., for plaintiffs-appellants.
 Paul H. LaRue, Chicago, Ill., Scott E. Flick, Washington, D. C., for defendant-appellee.
 Before FAIRCHILD, Chief Judge, and SWYGERT and BAUER, Circuit Judges.
 FAIRCHILD, Chief Judge.
 
 
 1
 These two appeals from judgments in favor of defendants raise the question whether actions under the antitrust laws by former stockholders for injuries to their dissolved corporation are barred by the Illinois Business Corporation Act, Ill.Rev.Stat. ch. 32 § 157.94, which limits the time period for a dissolved corporation to sue (or be sued) to within two years from the date of its dissolution.
 
 
 2
 Canadian Ace Brewing Co. was issued a certificate of dissolution on December 6, 1972, by the Secretary of State of Illinois. The complaints involved in these appeals were filed at separate times thereafter. On November 10, 1977, the individual former stockholders of Canadian Ace filed a complaint against Anheuser-Busch, Inc., a Missouri corporation. On November 13, 1978, Canadian Ace and the individual former stockholders, together, filed a three count complaint against Jos. Schlitz Brewing Co., a Wisconsin corporation.
 
 
 3
 The allegations in both complaints are substantially similar. In essence, plaintiffs claim that the defendants, Anheuser-Busch, and Jos. Schlitz Brewing Co. (respectively as the first and third largest producers of malt beverages) have monopolized, attempted or combined and conspired to monopolize the malt beverage trade, have entered into contracts, combinations and conspiracies to fix the prices of their malt beverages, and have discriminated in price among different wholesale purchasers of their malt beverages. As a result of these violations it is claimed that Canadian Ace was forced out of business. Additionally, it is alleged that defendants fraudulently concealed the illegal acts from plaintiffs by failing to maintain true and accurate records of the financial transactions which took place, by making fraudulent, false and misleading entries in their books and records and by preparing and filing false and misleading financial statements. The alleged wrongs, it is claimed, proximately and directly caused Canadian Ace to dissolve and the concealment caused more than two years to elapse prior to the discovery of the grounds for these actions.
 
 
 4
 In an earlier action brought by Canadian Ace against one of the same defendants, Anheuser-Busch, on allegations the same as those claimed here, the district court (Judge Will) refused to invoke its equitable powers to apply the principle of fraudulent concealment so as to toll the two year survival period and allow the corporation to bring the action five years after the corporation was dissolved. Judge Will noted that the plaintiffs, by invoking the principle of fraudulent concealment, attempted to apply to § 94 the tolling principle applied to a statute of limitation. Section 94, according to the court, was not a statute of limitation but a corporate survival statute, enacted both to aid in the winding up process of a corporation following the dissolution and also to prevent the abuse whereby a corporation would dissolve in order to escape creditors. Having found that the principle of fraudulent concealment had no application here, the court granted Anheuser-Busch's motion to dismiss. Canadian Ace Brewing Co. v. Anheuser-Busch, Inc., 448 F.Supp. 769, 771-72 (N.D.Ill.1978), aff'd 601 F.2d 593 (7th Cir.), cert. denied, 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 113 (1979).
 
 
 5
 The two district court judges below, Judge Marshall and Judge Grady, adopted and incorporated by reference Judge Will's opinion as a bar not only to the action by Canadian Ace, but likewise, the action brought by the individual stockholders. Schultz v. Anheuser-Busch, Inc. (Memorandum Order, September 13, 1979); Canadian Ace v. Jos. Schlitz Brewing Co. (Memorandum Opinion, August 3, 1979). These appeals followed and were argued separately before this court but on the same day. Since the actions raise substantially the same question and can be decided upon the same grounds, these appeals are consolidated in this opinion.[1] In both cases, plaintiffs would have us hold that § 94 does not apply to former shareholders suing in their individual capacities as successors to corporate property. In the event § 94 is held to apply, then they say the court should find the running of the statute suspended by the doctrine of equitable estoppel.
 
 
 6
 I. Applicability of § 94 to Shareholders' Action
 
 
 7
 At the outset we note that since we are required to determine plaintiffs' right to maintain these actions by construing § 94 of the Illinois statute, we are controlled by the decisions of the courts of Illinois. United States v. United States Vanadium Corporation, 230 F.2d 646 (10th Cir.), cert. denied, 351 U.S. 939, 76 S.Ct. 836, 100 L.Ed. 1466 (1956).[2] Section 157.94 of the Business Corporation Act (Ill.Rev.Stat.1975, ch. 32 Sec. 157.94) (hereinafter Section 94) states:
 
 
 8
 The dissolution of a corporation . . . shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name.
 
 
 9
 Under the common law a corporation's capacity to sue or be sued terminated when the corporation was legally dissolved. 16A W. Fletcher, Cyclopedia of the Law of Private Corporations § 8142 (1979 Rev. Vol. Richard P. Eickhoff). Today, however, the harshness of the common law on creditors and shareholders has been replaced in every state by statutes which extend the corporate life for a definite time for the purpose of prosecuting and defending suits. However, where a statute continues the existence of a corporation for a certain period, it is generally held that the corporation becomes defunct upon the expiration of such period, at least in the absence of a provision to the contrary, so that no action can afterwards be brought by or against it and must be dismissed. 16A Fletcher, supra, § 8144.
 
 
 10
 The many appellate court decisions interpreting § 94 and its predecessors (§ 14 and § 79) show that its intended purpose is to continue the life of a corporation for two years for the purpose of settling its affairs and that actions to collect claims due the corporation may be begun at any time within two years after dissolution of the corporation. After this two-year period, the corporation can neither sue nor be sued. Central Stock & Grain Exch. v. Pine Tree Lumber Co., 140 Ill.App. 471 (1908); Ruthfield v. Louisville Fuel Co., 312 Ill.App. 415, 38 N.E.2d 832 (1942); Malicki v. Bulkley, 107 Ill.App. 595, aff'd 206 Ill. 249, 69 N.E. 87 (1903). Also, cases decided similarly by the Court of Claims include Charles A. Zahn Co. v. United States, 6 F.Supp. 317 (1934); A. J. Bates Co. v. United States, 3 F.Supp. 245 (1933).
 
 
 11
 A literal reading of the statute also shows that its provisions are applicable not only to a dissolved corporation but also to its directors and shareholders. Koepke v. First National Bank of DeKalb, 5 Ill.App.3d 799, 284 N.E.2d 671 (1972).
 
 
 12
 Plaintiffs' theory in their briefs, as we view it, is that Canadian Ace had a cause of action for injuries incurred by defendants' alleged antitrust violations and that this cause of action was an asset which passed to them, the former shareholders, by operation of law upon dissolution. As such, they argue that they are now, in their individual capacities, asserting this claim and do not come within the two year limitations of the statute. In support of this argument, plaintiffs rely principally upon Levy v. Liebling, 238 F.2d 505 (7th Cir. 1956), cert. denied, 353 U.S. 936, 77 S.Ct. 812, 1 L.Ed.2d 759 (1957). That case, decided by this court, raised the question as to the ability of former shareholders to bring an action on a judgment, entered in favor of their corporation before dissolution, thirteen years after the corporation was dissolved. Our decision in that case, which allowed the shareholders to maintain a cause of action on the judgment, recognized the rights of former shareholders to succeed, in their individual capacities, to rights owned by their corporation prior to its dissolution.
 
 
 13
 Although the Levy decision was decided under Kentucky law, the Kentucky statute involved is similar to the Illinois statute, so that the reasoning in that case would be persuasive if the underlying factual situations were the same.[3]
 
 
 14
 Levy and the cases cited within Levy[4] are, however, distinguishable from the factual situation now before us. In Levy, the corporation prior to its dissolution (Imperial) not only commenced an action on a claim against Liebling, but such action was reduced to judgment in the Circuit Court in Cook County, Illinois. The judgment, thus, transformed the claim into a fixed debt. In contrast, the claim available to Canadian Ace against defendants, for the alleged antitrust violations, was never asserted by the corporation or its shareholders, either prior to its dissolution or within the two years thereafter.
 
 
 15
 The Illinois Business Corporation Act § 94 preserves claims existing prior to dissolution if action is commenced within two years after the date of dissolution. The statute does not require that the action be finished within this period and reduced to judgment, but only that it be commenced. In discussing § 14 and § 79 of the Illinois Business Corporation Act (predecessors to § 94) the Supreme Court of the United States stated:
 
 
 16
 After two years, no proceedings may be initiated on behalf of the corporation in either state or federal courts, but such proceedings as have been instituted during that period in any of these courts may be prosecuted to completion. Chicago Title and Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 128-29, 58 S.Ct. 125, 129, 82 L.Ed. 147 (1937).
 
 
 17
 We recognize the general principle that property of a dissolved corporation passes to its stockholders, who can then maintain an action on the property. (Fletcher, supra, § 8224, 19 Am.Jur.2d Corporations § 1659). However, we conclude that in view of the language within § 94, the unasserted claim here was extinguished after two years and did not pass to the former stockholder. In so holding we make a distinction between the transfer of a corporate claim reduced to a judgment and a never asserted corporate claim. The former represents a debt, fixed in amount, and is evidenced by a document. It is thus similar to a transfer of tangible property on which an action can be maintained. Brooks v. Saloy, supra.
 
 
 18
 The distinction made here, we think, is consistent with the language of § 94 and the policies behind it. As one commentary on the Illinois Business Corporation Act indicated:
 
 
 19
 (The court in Levy ) in effect drew a distinction between a suit filed more than two years after dissolution on a cause of action which had not been reduced to judgment, vis-a-vis a suit more than two years after dissolution on a judgment which had been obtained prior to dissolution. In the first case, a provision comparable to Section 94 would bar suit. ... The court, in effect, read a statutory provision comparable to Section 94 as applying to inchoate claims which were not reduced to judgment prior to dissolution but not to suits where the claim has been reduced to judgment prior to dissolution. This would make sense in light of the policy of Section 94 since the evidentiary problems in reducing an inchoate claim to judgment have been dealt with in the first proceeding; the second proceeding is merely to collect upon the judgment theretofore rendered.
 
 
 20
 West's Illinois Business Corporation Act Annotated, § 94, at 520 (W. Murdock ed. 1975).
 
 
 21
 Our holding here is also consistent with the view expressed in Gordon v. Loews, Inc., 147 F.Supp. 398 (D.N.J.1956), aff'd 247 F.2d 451 (3d Cir. 1957), which also involved actions for damages under the antitrust laws, initiated by former stockholders of dissolved Illinois corporations. The plaintiffs in Gordon argued that they had succeeded to the remedies which their dissolved corporation had by reason of alleged antitrust violations and therefore as tenants in common of these choses-in-action they were entitled to maintain the action. The court rejected this argument and held that § 94 was a bar to the plaintiffs' action, stating:
 
 
 22
 Whether the claim passed to the stockholders by assignment or operation of law, action thereon must be commenced within two years of dissolution.
 
 
 23
 I discern in the legislation under consideration a statement of public policy of the State of Illinois that remedies available to the corporation or its shareholders prior to its dissolution may be enforced only within two years after such dissolution, irrespective of the identity or status of the party seeking such enforcement.
 
 
 24
 147 F.Supp. at 408.
 
 
 25
 This opinion was cited with approval by the Illinois Appellate Court in Koepke v. First National Bank of DeKalb, 5 Ill.App.3d 799, 284 N.E.2d 671 (1972),[5] where the majority stockholder of the defunct corporation, on behalf of all stockholders, brought an action in equity based on breach of contract. The plaintiff attempted to avoid § 94 on the ground that his action was an equitable one brought not by the corporation but by the stockholder. The court held that the provisions of the statute were clearly applicable to stockholders of a dissolved corporation.
 
 
 26
 The analysis in Koepke was held to be controlling in the most recent decision by the Illinois Appellate Court construing § 94. In Poliquin v. Sapp, 72 Ill.App.3d 477, 390 N.E.2d 974 (1979) the court held that former stockholders could not maintain an action, on behalf of the corporation, two years and one week after the dissolution of the corporation. The court stated that "the dissolution of a corporation prior to the commencement of an action . . . does not serve to create individual rights of actions in shareholders, where the action, as here, is representative or derivative in character." Id. 72 Ill.App.3d at 481, 390 N.E.2d at 977.
 
 
 27
 The plaintiffs here attempt to distinguish the factual situations in the cases above on the ground that they are not suing as former stockholders but rather in their individual capacities as successors to the cause of action. No matter how plaintiffs classify themselves, we conclude, as we think the Illinois Supreme Court would, that § 94 bars, after two years, any actions on inchoate claims.
 
 
 28
 II. The Doctrine of Equitable Estoppel as a Bar to § 94
 
 
 29
 Plaintiffs argue that if they are found to come within the provisions of § 94, defendants cannot raise this as a bar to their actions because the limitation period is suspended by the doctrine of equitable estoppel. In support of this argument they cite Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) and this court's decision in Bomba v. W. L. Belvidere, Inc., 579 F.2d 1067 (7th Cir. 1978), where the doctrine was applied to two statutes of limitation. We conclude that § 94 destroys the capacity to sue after the lapse of two years and is a survival statute to which the doctrine of equitable estoppel does not apply.[6]
 
 
 30
 We recognize that the doctrine of equitable estoppel has been applied by the courts to statutes of limitations described as procedural and substantive. The statute involved here, however, is neither, as decisions construing § 94 have held that:
 
 
 31
 Section 94 is in essence a corporate survival statute rather than a statute of limitations. Its purpose is to extend the life of the corporation for a two year period after dissolution so as to allow suits to be brought by or against a corporation which would otherwise abate upon dissolution.
 
 
 32
 Poliquin v. Sapp, 72 Ill.App.3d 477, 481, 390 N.E.2d 974, 978 (1979) (citing People v. Parker, 30 Ill.2d 486, 490, 197 N.E.2d 30, 31 (1964); Consolidated Coal Co. v. Flynn Coal Co., 274 Ill.App. 405 (1934)).
 
 
 33
 The contrasting purposes behind the two statutes, limitation and survival, were noted by Judge Will in the Canadian Ace v. Anheuser-Busch litigation:[7]
 
 
 34
 The former (statutes of limitation) "were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to protect fraud the means by which it is made successful and secure." Bailey v. Glover, supra, 88 U.S. (21 Wall.) (342) at 349 (22 L.Ed. 636).
 
 
 35
 Corporate survival statutes, however, were enacted both to aid in the winding up process of a corporation following its dissolution and also to prevent the abuse whereby a corporation would dissolve in order to escape creditors.
 
 
 36
 448 F.Supp. at 772.
 
 
 37
 The Supreme Court of Illinois recognized this purpose early on in Life Association of America v. Fassett, 102 Ill. 315 (1882) where it concluded:
 
 
 38
 From these and other provisions of the statute it clearly appears that it is a part of the settled policy of the State, at least so far as domestic corporations are concerned, that upon their dissolution, however that may be effected, they shall nevertheless be regarded as still existing for the purpose of settling up their affairs and having their property applied for the payment of their just debts.
 
 
 39
 Id. at 324.
 
 
 40
 A number of courts in other jurisdictions which were asked to construe corporate survival statutes, like § 94, have noted that such statutes are based on a legislative judgment that:
 
 
 41
 There should be a definite point in time at which the existence of a corporation and the transaction of its business are terminated. To allow, as the plaintiff contends, the continued prosecution of lawsuits perverts the definiteness and orderly process of dissolution so as to produce a continuous dribble of business activity contrary to the intent of the winding up provisions of the statute.
 
 
 42
 Bishop v. Schield Bantam Co., 293 F.Supp. 94, 96 (N.D. Iowa 1968). See also Johnson v. RAC Corp., 491 F.2d 510, 512 n. 3 (4th Cir. 1973); Litts v. Refrigerated Transport Co., 375 F.Supp. 675 (M.D.Pa.1973).
 
 
 43
 Since the well-recognized purpose of survival statutes, like § 94, is to provide a specific duration of time for a corporation to wind up its affairs and thus to set a specified time when its existence is terminated, we conclude that extending this period, by application of the doctrine of equitable estoppel, would defeat the statute's purpose.
 
 
 44
 We are not unmindful of the fact that our decision here may in many situations provide a windfall to one party at the expense of the injured. However, we think the purpose and policies behind the survival statute requires the result we reach. As noted in 38 Am.Jur.2d Estoppel and Waiver § 34 at 638:
 
 
 45
 The operation of the doctrine of estoppel is limited in several respects involving the person or persons affected. . . . Estoppel cannot . . . be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest. It does not operate to defeat positive law or public policy.
 
 
 46
 Defendants are not barred from defending on the ground that the period allowed in § 94 has expired.
 
 
 47
 III. Anheuser-Busch's Counterclaim Against Schultz
 
 
 48
 A third issue for our determination in this opinion is that raised by Anheuser-Busch's counterclaim against the individual former stockholders of Canadian Ace.[8] The counterclaim was based on allegations that the individual stockholders had prosecuted Canadian Ace Brewing Co. v. Anheuser-Busch, Inc., supra, although they had no authority to act on behalf of Canadian Ace and had brought an unauthorized action in the name of Canadian Ace Brewing Co., even though Canadian Ace was without legal existence or capacity to sue. The district court granted plaintiffs' motion to dismiss on the ground that the plaintiffs did not bring an unauthorized action in the name of Canadian Ace but brought an action which was time-barred. We affirm the district court's dismissal of the counterclaim for the reasons stated herein.
 
 
 49
 Anheuser-Busch cites Merriman v. Merriman, 290 Ill.App. 139, 8 N.E.2d 64 (1937) and this court's decision in London & Lancashire Indem. Co. of America v. Duner, 135 F.2d 895 (7th Cir. 1943), as authority for its counterclaim. In Merriman, plaintiff had filed a five-count complaint against her husband and his attorney. Count five (the first four dealt with circumstances surrounding their divorce proceeding) alleged that the defendants, for the purpose of annoying, harassing and embarrassing the plaintiff and without the knowledge, authority or consent of a third party (Moore), caused two suits to be instituted in Moore's name against the plaintiff for alleged rents due him. Moore did not appear at the trial of the first or second suits and these suits were dismissed as was the appeal taken on the second suit. The plaintiff alleged that she was put to great expense in employing counsel and was prevented from following her ordinary affairs of business during the time of these suits and as a result suffered permanent impairment of health and sustained damages, which she now sought to recover.
 
 
 50
 The court held that an action could be maintained for the commencement of a suit against a party, without authority, in the name of a third person. The court distinguished this type of action from one for malicious prosecution or malicious abuse of civil process, in that:
 
 
 51
 the gist of the action is not want of probable cause, for there may be a good cause of action, but is based upon the improper liberty of using the name of another person in prosecuting a suit by which the defendant in the action is injured, nor is proof of malice essential to maintain the cause of action.
 
 
 52
 290 Ill.App. at 141, 8 N.E.2d at 67.
 
 
 53
 In Duner, a suit was commenced by Duner (the former president of the corporation) in the name of C.T.C. Investment Company against London & Lancashire. The complaint and amended complaint alleged that C.T.C. was a corporation organized and existing under the laws of the State of Illinois and both complaints were verified by Duner. The corporation had in fact dissolved in 1933 and the complaints were filed, respectively, in 1938 and 1939. London thereafter brought an action against Duner on the grounds that he acted without authority in bringing and prosecuting the action in the name of a non-existent corporation, for which London was entitled to recover compensatory damages; and that the action was instigated by Duner with knowledge that the corporation had dissolved and that he acted wrongfully and wilfully in prosecuting this action for which London was entitled to recover exemplary damages. The lower court rendered a judgment in favor of Duner on the ground that he was president of the corporation at the time the suit was brought, and, thus, the suit was not commenced without authority. Additionally, the lower court found that Duner was without knowledge of any lack of authority (the dissolution).
 
 
 54
 On appeal, we noted that Duner's past relationship with the corporation (that he was president) was immaterial to the question of his authority to bring the suit and that evidence of knowledge of the dissolution was not essential to sustain a tortious cause of action. We stated:
 
 
 55
 We think it is certain that the commencement of a suit in the name of a corporation, the legal existence of which has long been extinguished, is a wrong just as much as the commencement of a suit in the name of a person who has long been deceased.
 
 
 56
 135 F.2d at 899.
 
 
 57
 We do not think Merriman or Duner are applicable here because the factual situations in those decisions differed from the situation presented here.
 
 
 58
 Canadian Ace's complaint, filed November 10, 1977, alleged that it had dissolved on December 6, 1972 and that it had forborn from commencing this action for more than two years following its dissolution as a result of the fraudulent misrepresentation and acts of defendants and that it would have commenced the action within two years but for defendants' acts. The complaint thereafter specifically contains allegations for the purpose of establishing an equitable estoppel claim.
 
 
 59
 In part, the gravamen of Canadian Ace's complaint was thus to present the question whether the action could proceed even though it was not commenced within two years after dissolution. We do not consider the question frivolous, although decided adversely. Plaintiffs did not merely cause the complaint to allege the corporation's right of action, similar to the situation in Duner, nor did it bring the action in the name of another without real or even colorable authority, as in Merriman.
 
 
 60
 We affirm dismissal of the counterclaim, not on the ground that the actions were time-barred, as held by the district court, but because the commencement of an action disclosing the facts so as to present the question of authority to bring the action is not, in our judgment, a tort.
 
 
 61
 For the reasons stated in this opinion we affirm the judgments of the two district courts appealed from.
 
 
 
 [1]
 Judge Grady, in Canadian Ace v. Jos. Schlitz Brewing Co., held that Canadian Ace was collaterally estopped from relitigating the question on the basis of the decision in Canadian Ace v. Anheuser-Busch. We need not decide the applicability of collateral estoppel here, because we reach the same result on the merits
 
 
 [2]
 While there is federal jurisdiction based on Sherman Act claims, on the critical question of the former shareholders' right to sue, all parties agree that Illinois law is controlling
 
 
 [3]
 Kentucky Revised Statutes 271.585 is entitled Survival of remedy after dissolution, and states: "The dissolution of a corporation, either by the issuance of a certificate of dissolution by the secretary of state, or by the decree of a court when the court has not liquidated the assets and business of the corporation, or by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution, if suit thereon is commenced within two (2) years after the date of such dissolution. Any such suit by or against the corporation may be prosecuted or defended by the corporation in its corporate name." 1946 Ky. Acts ch. 141, § 1
 
 
 [4]
 The cases cited within Levy are distinguishable from the situation we are presently considering the transfer of inchoate claims to shareholders upon dissolution of the corporation. Brooks v. Saloy, 334 Ill.App. 93, 100, 79 N.E.2d 97 (1948), involved an action to remove a cloud on title to realty which was owned by the corporation and passed to stockholders upon dissolution. As owners of the transferred realty, heirs of the stockholders could maintain this action even though not within the statutory limitation period. Shadoin v. Sellars, 223 Ky. 751, 4 S.W.2d 717, 719 (1928); Barrowman Coal Corp. v. Kentland Coal and Coke Co., 302 Ky. 803, 196 S.W.2d 428 (1946) (a lease of property owned by corporation passed to shareholders upon dissolution); Kash v. Lewis, 224 Ky. 679, 6 S.W.2d 1098 (1928) (land owned by corporation passed to shareholders upon dissolution). We recognize that these cases support the principle that upon dissolution property of the corporation vests in the stockholders. But, we conclude that they do not have any application here in view of the fact that what is involved here is an inchoate claim which specifically comes within the dictates of § 94 and action on the claim must be commenced within the time period provided by that statute
 
 
 [5]
 The fact that the Third Circuit affirmed the district court's decision on different grounds does not detract from its authority. The district court's opinion was cited by the Illinois Appellate Court in Koepke 15 years after the Third Circuit's affirmance
 
 
 [6]
 In arguing against collateral estoppel, plaintiffs distinguish between the doctrine of tolling the statute of limitations and equitable estoppel. They characterize the earlier holding in Canadian Ace v. Anheuser-Busch, supra, as denying tolling only, and contend that they are not collaterally estopped from asserting that defendant was equitably estopped from reliance on § 94. We need not deal with this distinction in view of our decision that estoppel does not apply to § 94
 
 
 [7]
 448 F.Supp. 769 (N.D.Ill.1973)
 
 
 [8]
 This counterclaim was briefed and argued with Schultz v. Anheuser-Busch, supra