[No. B008127. Second Dist., Div. Six. Mar. 13, 1986.]

JAMES C. RILEY, JR., et al., Plaintiffs and Appellants, v.
BEN M. FITZGERALD et al., Defendants and Respondents.

872

**COUNSEL**

Bushkin, Gaims, Gaines & Jonas, Perry D. Mocciaro, Ernst & Mattison, Don Ernst, Lascher & Lascher and Edward L. Lascher for Plaintiffs and Appellants.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, Richard G. Osborn, Gary E. Shoffner, David W. Grace, Conkle & Olesten, Christina Olesten, Bright & Brown, Gregory C. Brown, Maureen J. Bright and John Quirk for Defendants and Respondents.

**OPINION**

**STONE, P. J.**—Here we are asked to decide whether appellants, as sole shareholders of a dissolved Texas corporation and assignees of its assets, may prosecute an action asserting injuries to and fraud upon the corporation after the three-year postdissolution survival period provided by Texas law. We hold they may not and affirm the judgment.

James C. Riley, Jr., and James C. Riley III (Rileys), Texas residents, appeal from judgment on the pleadings based upon the trial court's holding that Rileys' causes of action are barred because, pursuant to Texas common law and article 7.12 of the Texas Business Corporations Act, claims for damages to dissolved Texas corporations must be brought within three years of dissolution.

## FACTS

April 20, 1978, a day prior to voluntary dissolution, Mindevco, Inc., a Texas corporation, assigned to Rileys, Mindevco's sole shareholders, all its tangible and intangible assets in exchange for cancellation or redemption of all outstanding capital stock pursuant to provisions of a plan of complete liquidation. December 19, 1983, Rileys filed a complaint in the San Luis Obispo County Superior Court for fraud, breach of fiduciary duty, restraint of sale or transfer of royalty rights, constructive trust and accounting against various defendants based upon a joint venture between Mindevco and defendants involving oil leases on certain San Luis Obispo property.[1]

In essence, Rileys' complaint charged that defendants had created, in California, secret assignments of overriding interests on oil and gas produced from the leases, thus diminishing the price received, and yielding to defendants substantial unlawful profits. The verified complaint alleged that Rileys were proper parties to bring the claims because they were successors in interests of Mindevco, as distributees of its assets and property. The first amended complaint alleged they were successors in interest by virtue of a written assignment to them of all of Mindevco's rights and property and as distributees by operation of law.

Because Rileys were suing to recover tort damages allegedly incurred by Mindevco, defendants filed motions for judgment on the pleadings, contending that the right of shareholders to sue for damages to a dissolved Texas corporation depended on Texas law, and, pursuant to Texas common law and article 7.12 of the Texas Business Corporation Act, these claims should have been brought within three years of dissolution. In the trial court, Rileys agreed that Texas law controlled and, as did defendants, asked the court to take judicial notice of decisional and statutory laws of Texas

---

[1]Defendants and respondents are: (1) Fitzgerald, an individual resident of Bakersfield, also president and sole shareholder of defendant Chapparal Petroleum, a California corporation; Monterey Minerals and Land Company, a California corporation headquartered in Bakersfield; Columbine Minerals, Inc., a California corporation with its main office in Houston, Texas; Augusta, a joint name of Augusta Land Co., Inc. and defendant Augusta Land Company, both Texas corporations with Augusta Land Co., a successor in interest to Augusta Land Co., Inc; and McFarland Energy, Inc., a California corporation with its principal place of business in Santa Fe Springs.

and courts of the United States. Rileys argued that, under Texas law, the applicable Texas statute should be tolled by the doctrine of equitable estoppel because they alleged fraudulent concealment.

The trial court held that Texas law applied and that Rileys' action had not been brought within the statutory three-year survival "grace" period following dissolution of their corporation. The court further held that because article 7.12 is a survival statute and not a statute of limitations, the Texas law of equitable estoppel is not applicable.

Rileys contend that: (1) California law, which permits corporate claims within the time involved here, should have controlled; (2) rules involving suits by and against dissolved corporations were irrelevant to whether individual plaintiffs were barred; and (3) current Texas law similarly precludes the trial court's result.

### Discussion

*1. The Trial Court Made the Correct Choice of Law*

■ Rileys claim, made for the first time on this appeal, that California law should apply, contending they may change their theory because only a question of law is raised. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *ABI, Inc.* v. *City of Los Angeles* (1984) 153 Cal.App.3d 669, 687, fn. 16 [200 Cal.Rptr. 563].) Here, there was more than acquiescence or inadvertence in raising an issue. Rileys actively agreed on the choice of law. Generally, a party must abide by the consequence of his own acts and cannot seek reversal for errors which he committed or invited. (*Sommer* v. *Martin* (1921) 55 Cal.App. 603, 609-610 [204 P. 33]; *Abbott* v. *Cavalli* (1931) 114 Cal.App. 379, 382 [300 P. 67].) However, even if Rileys did not waive the issue, Texas law would still apply.

■ Rileys contend that choice of law in California is determined by "governmental interest analysis" rather than the application of law of incorporation. We disagree. "Governmental interest analysis" applies only when there is true conflict of laws. ■ That two states are involved does not in itself evidence a "conflict of laws" or "choice of laws" question. Certainly, there is no conflict where the laws of two states are identical. (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 161-162 [148 Cal.Rptr. 867, 583 P.2d 721]; *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666].)

Nonetheless, Rileys argue that, since California Corporations Code section 2010 contains no limitations on actions by or against dissolved corpo-

rations other than the general statute of limitations for fraud, i.e., three years from discovery, and article 7.12 of the Texas Business Corporations Act contains a three-year limitation of actions by or against a dissolved corporation, there is conflict which necessitates resolution by "allocating respective spheres of lawmaking influence." (*Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d 157, 165.)

We believe the decisive question is which law each state applies to dissolved corporations. The answers in both California and Texas decisions are in agreement. It is settled law in California that the effect of corporate dissolution or expiration depends upon the law of its domicile, and a defunct foreign corporation has no greater capacity or higher standing to initiate or maintain an action in the forum state than it would have in its domiciliary state. (*Fidelity Metals Corp.* v. *Risley* (1946) 77 Cal.App.2d 377, 381 [175 P.2d 592]; *J. C. Peacock, Inc.* v. *Hasko* (1960) 184 Cal.App.2d 142, 150 [7 Cal.Rptr. 490]; *Lewis* v. *LeBaron* (1967) 254 Cal.App.2d 270, 278-279 [61 Cal.Rptr. 903]. See also *Anderson* v. *Derrick* (1934) 220 Cal. 770, 775 [32 P.2d 1078]; *Crossman* v. *Vivienda Water Co.* (1907) 150 Cal. 575, 580 [89 P. 335].) Under Texas law, whether a foreign dissolved corporation still exists for any executory purposes is also determined by laws of the state of creation. (*County Cupboard, Inc.* v. *Texstar Corp.* (Tex. Civ. App. 1978) 570 S.W.2d 70, 72, citing *Ferguson-McKinney Dry Goods Co.* v. *Garrett* (Tex.Com.App. 1923) 252 S.W. 738.)

█ Nothing in the California Corporations Code indicates that this long-held principle has been overruled or superseded by statute. Section 2010 provides in pertinent part: "(a) A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof. [¶] (b) No action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof."

Section 2115 specifies chapters and sections which apply to foreign corporations to the exclusion of the law of the jurisdiction in which they are incorporated. Conspicuous by its absence is section 2010. The only other pertinent published California appellate opinion confirms this observation. The reviewing court in *North American Asbestos Corp.* v. *Superior Court* (1982) 128 Cal.App.3d 138 [179 Cal.Rptr. 889], determining the validity of service by mail upon a dissolved Illinois corporation for an action commenced after its survival "grace" period terminated, held that the court had *jurisdiction* over the trustee and stockholders through Code of Civil Pro-

cedure section 416.20. It noted, however, that the proper challenge was by demurrer, motion for summary judgment or other procedures because California survival law does not apply to suits against dissolved foreign corporations. (*Id.*, at 143.) "From a reading of the Corporations Code generally, we conclude that it does not apply to foreign corporations which have dissolved. Corporations Code section 102 provides that with certain exceptions not applicable here the provisions of the Corporations Code apply only to domestic corporations and that application to other corporations is permitted only 'to the extent expressly included in a particular provision of this division.' Section 2010 is in chapter 20 of division 1, which is entitled 'General Provisions Relating to Dissolution.' Nowhere is there any mention that the provisions of that chapter or of section 2010 apply to foreign corporations. Foreign corporations are the subject of the entire next chapter, chapter 21." (*Id.*, at p. 144, fn. omitted.)

██ Assuming conflict, Texas law would still apply under the "governmental interest analysis." True conflicts should be resolved by applying the law of the state whose interest would be more impaired if its law were not applied. (*Offshore Rental Co., supra*, 22 Cal.3d at 164-165.) Arguable California interests are prevention of fraud by California residents and corporations against foreign residents and corporations or vindication of foreign claims. Texas has an interest in controlling actions, rights and liabilities of its domestic corporations and in the uniform regulation of affairs of business corporations created under the authority of Texas statutes. The instant case is similar to *People* v. *One 1953 Ford Victoria* (1957) 48 Cal.2d 595 [311 P.2d 480] cited in *Offshore Rental* as an example of the California Supreme Court's refusal to apply California law to a Texas mortgagee under the "comparative impairment" analysis. We do not believe that California has greater interest in providing Texas residents—former shareholders in a dissolved Texas corporation—greater protection than Texas would afford them. The trial court correctly applied Texas law.

*2. Texas Statute Applies to an Individual Bringing Action for an Alleged Wrong to Dissolved Corporation*

██ Article 7.12 of the Texas Business Corporation Act provides in pertinent part:

"Survival of Remedy After Dissolution

"A. The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this Act, or (3) by expiration of its period of duration, shall

not take away or impair any remedy available *to or against* such corporation, its officers, directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution *if action or other proceeding thereon is commenced within three years after the date of such dissolution.* Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim. . . ." (Italics added.)

Rileys contend this statute is inapplicable because no dissolved corporation is a party to this litigation. Their argument is based on the theory that if they obtained the assets by assignment instead of distribution by operation of law upon dissolution, their claims are individual and not derivative. No Texas court has passed upon the precise question whether former shareholders who hold assets either by assignment or distribution may maintain an action after expiration of the corporate continuance period. ▆▆ Thus, this court is in the unique position of deciding what a Texas court would decide if it had to decide it. To do this, we must look to the law of other jurisdictions with statutes similar to article 7.12.[2]

▆▆ A court may take judicial notice of matters in ruling on a matter for judgment on the pleadings. (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 630 [99 Cal.Rptr. 393].) ▆▆ In determining the legislature's intent in enacting a statute, a court may consider the construction that has been placed on similar laws, including the construction placed by a court of another jurisdiction on a similar statute. (*In re Estates of Carrigan* (Tex.Civ.App. 1974) 517 S.W.2d 817, 819.)

▆▆ At common law, dissolution terminated a corporation's legal existence. (*Hunter* v. *Fort Worth Capital Corp.* (Tex. 1981) 620 S.W.2d 547, 549-550.) It could neither sue nor be sued and all legal proceedings in which it was a party abated. (*Ibid.*) To remedy the harsh effect of common law, Texas, like most states, enacted a "saving" statute. (*Temple-Eastex Inc.* v. *Addison Bank* (Tex. 1984) 672 S.W.2d 793, 796.) Article 7.12, the Texas "Survival of Remedy" statute, is derived from Section 105 of the Model Business Corporation Act. (*Hunter* v. *Fort Worth Capital Corp., supra,* 620 S.W.2d 547, 549.) The initial draft of the Model Business Corporation Act was based upon the Illinois Business Corporation Act of 1933, and the Bar Committee Sources listed in the Historical Note under Article 7.12 include the Model Business Corporation Act § 98, and the Illinois Business Cor-

---

[2] We granted respondents' requests to take judicial notice of decisions of Texas and other states as they pertain to the issues raised. (Evid. Code, §§ 452 subd. (a), 459 subd. (a).)

poration Act § 94. (See Garrett, *Model Business Corporation Act,* 4 Baylor L.Rev. 412 (1952).) Thus, it is not surprising that the Texas Supreme Court has relied on Illinois cases interpreting a similarly worded Illinois corporate survival statute. The only significant difference between the Illinois statute and article 7.12 is the period of time after dissolution in which suit must be commenced-in Illinois, it is two years, in Texas three. (*Hunter v. Fort Worth Capital Corp., supra,* at p. 551.)

Decisions interpreting the Illinois survival statute have barred assertion of claims after expiration of the statutory period. (*Canadian Ace Brewing v. Joseph Schlitz Brewing Co.* (7th Cir. 1980) 629 F.2d 1183, 1185; *Gordon v. Loew's Incorporated* (N.J. 1956) 147 F.Supp. 398, 408; *Poliquin v. Sapp* (1979) 72 Ill.App.3d 477, 28 Ill.Dec. 615 [390 N.E.2d 974, 977]; *Koepke v. First National Bank of Dekalb* (1972) 5 Ill.App.3d 799 [284 N.E.2d 671, 672].) Other jurisdictions with similarly worded "saving" statutes also bar late claims. (*Litts v. Refrigerated Transport Co., Inc.* (D.C.Pa. interpreting Ga. law 1973) 375 F.Supp. 675, 678; *U.S. Plywood-Champion Papers v. Pan Amer. Gyro-Tex Co.* (D.C.Ill. interpreting Wis. law 1972) 345 F.Supp. 1, 3; *McGlynn v. Rosen* (Fla.App. 1980) 387 So.2d 468, 469; *MBC, Inc. v. Engel* (1979) 119 N.H.8 [397 A.2d 636, 639].)

Rileys assert that Texas would allow the equitable doctrine of estoppel to toll the statute since they allege fraudulent concealment. However, courts interpreting corporate continuance statutes similar to article 7.12 have refused to apply equitable remedies to defeat survival statutes in contrast to statutes of limitation. In fact, in *Hunter v. Fort Worth Capital Corp.,* the Texas Supreme Court refused to extend the equitable trust fund theory to postdissolution claims.[3] There, the court, faced with a suit by an injured worker against former shareholders of a dissolved corporation for injuries when an elevator installed and serviced by the dissolved corporation fell on him eleven years after corporate dissolution, held that article 7.12 provides statutory remedies for pre-dissolution claims only. It further held that "Article 7.12 expresses a legislative policy to restrict the use of the trust fund theory to pre-dissolution claims, and to protect shareholders, officers and directors of a dissolved corporation from prolonged and uncertain liability." (*Id.,* at 551. See also *Canadian Ace Brewing v. Joseph Schlitz Brewing Co., supra,* 629 F.2d 1183, 1188 where, in a suit for fraud by shareholders in their individual capacities as successors in interest, the court held that the Illinois corporate continuance statute was a survival statute to which the doctrine of equitable estoppel does not apply. And see *Van Pelt v. Great-*

---

[3]The trust fund theory applies whenever the assets of a dissolved corporation are held by any third party, including corporate officers and directors, so long as the assets are traceable and have not been acquired by a bona fide purchaser. (*Hunter, supra,* at p. 550.)

*house* (1985) 219 Neb. 478 [364 N.W.2d 14, 19]: "If [Neb.Rev.Stat. § 21-20, 104] is a survival statute rather than one of limitations, not even equity could estop its application.")

Rileys' argument that their claim is different because they received corporate assets as assignees has also been decided to the contrary. Texas has long recognized that an assignment of one holding a right of action occupies no better position than the assignor, and is subject to the same rule concerning limitation of his action. (*Adams* v. *San Antonio Life Ins. Co.* (1916) 185 S.W. 610.) In *U.S. Plywood-Champion Papers* v. *Pan Amer. Gyro-Tex Co., supra,* interpreting the Wisconsin statute, the court held the rights of corporations' assignees were extinguished two years after dissolution of the corporation despite their contention that since assignment of assets was made thirty days prior to filing of articles of dissolution, there was no claim belonging to the corporation for the statute to extinguish. "If accepted, this argument would reduce the statute to a nullity since Wisconsin requires distribution of corporate property prior to the filing of articles of dissolution." (345 F.Supp. 1, 3.)[4] (See also *Gordon* v. *Loew's Incorporated, supra,* 147 F.Supp. 398.)

Title and interest that plaintiffs acquire by operation of law is no different from that acquired by assignment, and their capacity to sue is not dependant upon the manner of acquisition. (*Levy* v. *Liebling* (7th Cir. 1956) 238 F.2d 505, 508.) Strict construction of corporate continuance statutes are required because matters concerning corporate continuance upon dissolution affect fundamental law of corporations enacted by a state which allowed their birth. (*MBC, Inc.* v. *Engel, supra,* 397 A.2d 636, 638.) "We will not permit the corporation continuance statute to be circumvented by allowing former shareholders to assert expired rights of a defunct corporation after the statutory period has elapsed. The expired right is no more enforceable in the former shareholders' possession than it is in the defunct corporation's. . . . The former shareholder has no greater rights than the defunct corporation." (*Id.,* at 639.) The trial court correctly held that article 7.12 applied to Rileys.

### 3. *Current Texas Law Does Not Mandate a Different Result*

To add a choric note to their threnodies, Rileys contend the recent case of *Nelson* v. *Krusen* (Tex.S.Ct. 1984) 678 S.W.2d 918 indicates Texas would find unconstitutional any statute which imposed an unreasonable condition under its "open courts" doctrine. They argue that failure to apply equitable estoppel is unreasonable. In *Nelson* v. *Krusen,* parents and their

---

[4]Article 6.04 of the Texas Business Corporations Act contains a similar provision.

minor son, Mark, sued Doctor Krusen and Baylor Medical Center, alleging that the doctor negligently advised them that Mr. Nelson was not a genetic carrier of neuromuscular disease. The trial court rendered summary judgment for the doctor and Baylor on grounds that the statute of limitations had run on wrongful birth and there was no cause of action for wrongful life in Texas. The Texas Supreme Court reversed in part and held that the statute of limitations did not bar the Nelsons' claims. The statute arguably began running on the date of the last examination or on Mark's birth and barred claims after two years. Under the Supreme Court's prior holding of *Sax* v. *Votteler* (Tex. 1983) 648 S.W.2d 661, the statute could not extinguish Mark's cause of action before he reached the age of legal capacity. In *Nelson,* the court held the two-year statute of limitations for actions arising out of medical malpractice violates the "open courts" provision of the state Constitution by barring a cause of action before the party knows, or reasonably should know that he is injured.

Article 1, section 13 of the Texas Constitution provides in part: ". . . All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have a remedy by due course of law." Separate due process and open courts guarantees have been included in every Texas Constitution since it became a sovereign republic. (*Nelson* v. *Krusen, supra,* at p. 921.) The common thread of Supreme Court decisions construing open courts provisions is that the legislature has no power to make a remedy by due course of law contingent on an impossible condition. (*Ibid.*) These decisions hark back to 1860, and the Texas Supreme Court has invalidated statutory provisions attempting to impose requirements upon suit which are held to be "unreasonable" and, therefore, violative of the "open courts" provision. (See *Dillingham* v. *Putnam* (1890) 109 Tex. 1 [14 S.W. 303]; *Hanks* v. *City of Port Arthur* (1932) 121 Tex. 202 [48 S.W.2d 944, 83 A.L.R. 278]; *McCrary* v. *City of Odessa* (1972) 482 S.W.2d 151; *Sax* v. *Votteler, supra,* 648 S.W.2d 661.)

*Nelson* simply followed a long line of decisions and extended *Sax* v. *Votteler,* another medical malpractice case. In *Sax,* the Texas Supreme Court held that a statute removing previously allowed tolling of a two-year period of limitations in medical malpractice actions by minors after reaching age six is violative of due process guarantees set forth in the "open courts" provision of the Texas Constitution insofar as it effectively abolishes a minor's right to bring a *well-established common law* cause of action without providing a reasonable alternative.

Therein lies appellants' problem. The due process guarantee set forth in the "open courts" provision of the Texas Constitution ensures that Texas citizens bringing *common law* causes of action will not *unreasonably* be

denied access to the courts. (*Sax* v. *Votteler, supra,* 648 S.W.2d 661, 664.) *Sax* described a two-part test. First, it must be shown that the litigant has a cognizable common-law cause of action that is being restricted, and second, the litigant must show that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. (*Id.,* at p. 666) However, the "legislature can avoid an otherwise unconstitutional result by providing a substitute remedy . . . or by leaving a reasonable alternative at common law." (*Nelson* v. *Krusen, supra,* 678 S.W.2d 918, 927; *Sax,* 648 S.W.2d at 667.) The "reasonable alternative" at common law was *no* alternative. Since at common law a corporation could not sue or be sued subsequent to dissolution, article 7.12 does not abrogate a common-law right but instead increases the litigant's right to redress by extending the period in which to file suit.

Moreover, if the "open courts" doctrine mandates the result Rileys argue, why did not the *Hunter* court apply it when, as stated in the dissent, equity cried out for a remedy? (620 S.W.2d at 555, Spears dis.) The Supreme Court had the opportunity to apply an equitable remedy and declined to do so. *Hunter* was neither overruled by nor even mentioned in *Nelson.* Under Texas law, "unless invalidity of a statute is apparent beyond a reasonable doubt, its constitutionality must be upheld by the courts." (*Guinn* v. *State* (Tex.Civ.App. 1977) 551 S.W.2d 783, 788.) A presumption exists that the legislature has not acted unreasonably or arbitrarily in enacting its legislation. (*Sanchez* v. *Texas Dept. of Human Resources* (Tex.Civ.App. 1979) 581 S.W.2d 260, 266.)

*Fitts* v. *City of Beaumont* (Tex.Civ.App. 1985) *infra,* 688 S.W.2d 182, cited by Rileys and relied upon by the dissent, is inapposite to the case at bench. *Fitts* held that the 60-day notice requirement for suits against the city was arbitrary and unreasonable when compared to the six-month period of the "Tort Claims Act" from which the city charter provision derived. Although the *Fitts* court did not discuss the first prong of the *Sax* v. *Votteler* test and thus, as the dissent says, "had no difficulty in applying the open courts doctrine to an action based on a statutory right rather than a common law right," other Texas appellate court decisions have adhered to the principle enunciated in *Sax* and reiterated in *Nelson* that Texas citizens bringing *common law* causes of action will not unreasonably be denied access to the courts. (See *McCullough* v. *Fox & Jacobs, Inc.* (1985) 696 S.W.2d 918; *Mellendez* v. *Beal* (1984) 683 S.W.2d 869.)

The dissent would have Texas courts, rather than the Legislature, create a new right of action which did not exist at common law. The open courts provision of the Texas State Constitution does not create new rights, but is a declaration of a general fundamental principle that for such wrongs as the

law of the land recognizes, the courts shall be open and afford a remedy. (*McCullough* v. *Fox & Jacobs, Inc., supra,* 696 S.W.2d 918.) Rileys' right is no greater—or different—than that of their corporation.

Moreover, the "equitable trust fund" theory evolved to alleviate the harsh effects of the common law on creditors which left the creditor without a defendant to sue. (*Hunter* v. *Fort Worth Capital Corp., supra,* 620 S.W.2d 547, 550.) However, the current remedial statute, article 7.12, bars resort to the trust fund theory as it exists apart from the statute. (*Hunter* at p. 551.) As the dissent points out, the *Hunter* court did not have to decide whether it would have reached a different result had there been an allegation that the dissolution of H. H. Hunter Corporation constituted a fraud on creditors. Nevertheless, even if, under the "open courts" doctrine, the Texas Supreme Court decided that the legislature could not cut off a party's common-law action for fraud without providing a reasonable alternative, it does not follow that it would revivify a cause of action for fraud perpetrated on a corporation subsequently dissolved, a right which did not exist at common law.

Texas might decline to find the statute unconstitutional for another reason: Texas courts have refused to entertain constitutional challenges to statutes where the party asserting the challenge has accepted benefits from the statute.[5] (*Beneficial Finance Company of Midland* v. *Miskell* (Tex.Civ.App. 1968) 424 S.W.2d 482, 484 citing *Fahey* v. *Mallonee* (1947) 332 U.S. 245 [91 L.Ed. 2030, 67 S.Ct. 1552].) As sole shareholders, Rileys subjected themselves to the Texas Business Corporations Act and utilized its provisions. (See *Neel* v. *Texas Liquor Control Board* (Tex.Civ.App. 1953) 259 S.W.2d 312 where a retailer of liquor voluntarily submitted himself to provisions of law regulating retail liquor dealers and accepted benefits thereunder, and was held to waive the right to urge any constitutional objections to the statute.)

Therefore, we hold that, presented with the issue before us, Texas courts would find article 7.12 a bar to Rileys' claims. The judgments appealed from are affirmed. Each party to bear their own costs on appeal.

Abbe, J., concurred.

**GILBERT, J.**—I respectfully dissent.

I agree with the majority that Texas law should be applied in this case. I also agree that our position is a unique if not an anomalous one. It is difficult

---

[5] This is not, as the dissent states, "our reasoning," but a principle of Texas law.

enough deciding cases based on California law, but the majority suggests we are California judges deciding how Texas judges, relying on Illinois and Texas law would decide this case. Perhaps we are just California judges deciding a case based on Texas law. Under either of the above approaches, I would reach a different result.

I would apply equitable principles to the survival statute here, and I think Texas courts would do the same. Prior to the enactment of article 7.12 of the Texas Business Corporations Act, the equitable "trust fund theory" permitted creditors of a dissolved corporation to pursue the assets of that corporation which were held by third parties, including corporate officers, directors, and shareholders. The dissolution of the corporation did not therefore bar all suits involving that corporation. In *Hunter* v. *Fort Worth Capital Corp.* (Tex. 1981) 620 S.W.2d 547, 551 (dis. opn. of Spears, J.) the Texas Supreme Court held article 7.12 restricted the use of the trust fund theory to predissolution claims.

The *Hunter* court however, recognized that in some cases equitable relief was available to creditors of a dissolved corporation. The *Hunter* court held that article 7.12 took the place of the "trust fund theory" of recovery, but it did not say that in all causes of action involving a dissolved corporation, no equitable relief would ever be proper. In footnote 7 at page 552, the *Hunter* court suggests it might have reached a different result if the dissolution of the corporation had constituted a fraud on creditors or litigants.

Here, it is alleged a fraud has been committed on the shareholders of the dissolved corporation. *Hunter* involved a negligence cause of action and "the dissolution was accomplished for a legitimate purpose and in accordance with statutory requirements." Here, the dissolution of the corporation was also accomplished for a legitimate purpose, but it is the shareholders who are the alleged victims of fraud. If the shareholders of a corporation dissolved for improper purposes might still be subject to an action at law after dissolution, then shareholders of a properly dissolved corporation should not be barred from bringing a legitimate cause of action for fraud after dissolution.

I think under Texas law, a tolling of article 7.12 would take place within the framework of the "open courts" doctrine. The open courts doctrine is inextricably bound to the principle of due process. (*Nelson* v. *Krusen* (Tex. 1984) 678 S.W.2d 918, 921.) The open courts doctrine prevents the legislature from keeping litigants out of the court house when it makes a remedy contingent on an impossible condition. (*Ibid.*) The Rileys are offered a remedy at law only if they bring an action before they are aware they have a cause of action. Clairvoyance should not be a prerequisite to a law suit.

Here, as in the *Nelson* case, the statute requires the plaintiffs ". . . to do the impossible—to sue before they had any reason to know they should sue. Such a result is rightly described as 'shocking' and is so absurd and so unjust that it not ought to be possible. [Citations.] Deferring to the legislative imposition of such an unreasonable condition would amount to an abdication of our judicial duty to protect the rights guaranteed by the Texas Constitution, the source and limit of legislative as well as judicial power. This we cannot do. We hold [the statute] unconstitutional, under the open courts provision, to the extent it purports to cut off an injured person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit." (*Nelson* v. *Krusen, supra,* 678 S.W.2d at p. 923.)

The *Nelson* case was a negligence case where culpability was less than it is here. As the Rileys point out, there is even a more compelling reason to apply the open courts doctrine to a case involving fraud. The effect of the majority decision is to reward intentional wrong doers for their cunning. The more adept they are at concealing their fraud, the more assured they are of escaping the consequences of their own acts.

The majority state that the open courts doctrine enunciated in *Nelson* v. *Krusen, supra,* 678 S.W.2d 918, 921 and *Sax* v. *Votteler* (Tex. 1983) 648 S.W.2d 661 applies only to common law causes of action. Therefore, since there was no common law cause of action on behalf of or against a dissolved corporation, the open courts principle enunciated in *Nelson* and *Sax* would have no applicability here. I disagree.

Texas courts would apply the open courts doctrine to this case as well as to actions at common law. In *Fitts* v. *City of Beaumont* (Tex.Civ.App. 1985) 688 S.W.2d 182, cited by the Rileys, the Texas Court of Appeals held that a 60-day notice requirement for suits against the city of Beaumont violated the open courts doctrine. The plaintiff's claim in *Fitts* was based on a statutory right, the Texas Tort Claim Act. At common law the city had a defense of sovereign immunity. The Texas court had no difficulty in allowing plaintiff the right to file suit against the city even though she did not comply with the city's 60-day notice ordinance, because the ordinance violated the state's open courts doctrine. The *Fitts* court relied on *Hunter* and *Sax.* It had no difficulty in applying the open courts doctrine to an action based on a statutory right rather than a common law right. It would have had no difficulty doing the same thing here. Neither should we.

I don't accept the reasoning of the majority that since the Rileys accepted the benefit of the survival statute, they may not ask for relief. As the Rileys point out, they received no benefit by way of protection from any liability that was extinguished as a result of the dissolution. Rather, they suffered

the loss of a sizeable investment. People in the business world who are naive may not survive long, but we should not be so cynical as to expect them to anticipate fraudulent conduct on the part of people with whom they carry on business transactions.

The majority's rigid adherence to common law may ignore the very jurisprudential foundation of the common law. "The net effect of the [majority's] holding is to permit, and even encourage, the evasion of historic common law principles and sound public policy that wrongdoers respond in damages to a person injured as a proximate cause of that wrong." (*Hunter v. Fort Worth Capital Corp., supra,* 620 S.W.2d 547, 556.)

A petition for a rehearing was denied April 9, 1986. Gilbert, J., was of the opinion that the petition should be granted. Appellants' petition for review by the Supreme Court was denied July 10, 1986. Bird, C. J., was of the opinion that the petition should be granted.