Filed 9/3/14  Price v. Certain Rolls Royce Corniche etc. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DONALD B. PRICE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THAT CERTAIN 2000 ROLLS ROYCE CORNICHE VIN NO. CAZK29E3YCX68097,<br><br>    Defendant,<br><br>CHARLES A. SWACK,<br><br>    Defendant and Appellant. | B250494<br><br>(Los Angeles County<br>Super. Ct. No. SC108084) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Richard A. Stone, Judge.  Affirmed.

Miles Archer Woodlief for Plaintiff and Respondent Donald B. Price.

Pollak, Vida & Fisher, Michael M. Pollak and Daniel P. Barer, for Defendant and Appellant Charles A. Swack.

_____

A Florida car dealer purported to sell or transfer the same Rolls Royce to two unrelated individuals, Donald Price and Charles Swack. After Price took possession of the car it was impounded in California. Price filed an *in rem* complaint for "turn over, quiet title, [and] declaratory relief." Swack cross-complained for conversion, replevin, and quiet title. Following a bench trial, the trial court concluded Swack was the rightful owner of the car, but the court rejected his claim for damages. On appeal, Swack challenges the trial court ruling denying him loss of use damages in connection with his replevin claim. We find no error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 2009, Swack purchased a 2000 Rolls Royce Corniche (the Corniche) from Cars Internationale, a Florida dealership, for $120,000.[1] Swack drafted a list of items that needed to be fixed on the Corniche; Cars Internationale was to keep the car and make the necessary repairs before delivering possession to Swack. Swack received a bill of sale and he insured the car. In February 2010, when Swack went to Cars Internationale to check on the car, he discovered the dealership had not done any of the required work. Although Swack drove the Corniche and kept it over the weekend, he returned it so the repairs could be made. In April 2010, someone from the dealership called Swack and told him the car was missing. Swack demanded the dealership get the car back or return his money. Eventually Swack reported the car stolen to the Fort Lauderdale police and his insurance company. At the end of April 2010, Swack learned the car was listed for sale on eBay, by a seller in Van Nuys. Swack contacted the Fort Lauderdale police again; law enforcement in California confiscated the car.

As it turned out, in November 2009, Cars Internationale was also dealing with Price. In November 2009, Price agreed to sell a 2000 Rolls Royce Silver Seraph through the dealership on consignment. After selling the car, Cars Internationale owed Price $60,000. Price was told the dealership was waiting for the money to pay him.

---

[1] To fund the purchase Swack traded in two other cars, paid some cash, and financed the remainder of the $120,000 purchase price.

Several weeks passed. While Price was waiting to be paid, one of the dealership principals, Danny Swan, offered to sell Price a 2002 Rolls Royce Silver Seraph. Price agreed to buy the 2002 Silver Seraph and paid Cars Internationale an additional $16,500. However, in December 2009, after Price took possession of the 2002 Silver Seraph, Swan called Price to report there were problems with the title on the car. Swan represented that the DMV needed to inspect the car personally. Price also wanted Cars Internationale to make a few repairs on the car, so he allowed the dealership to take it back. The dealership never returned the 2002 Silver Seraph. Price was told the dealership was unable to secure "clean title" on the car and it would refund his money. However, the dealership did not refund the money. In January 2010, the dealership issued Price a check for over $75,000 and asked him to wait a few days before depositing it. After a few days, Price called the issuing bank and learned the bank would not honor the check.

At trial, Price testified that by February 2010, he was concerned about the situation but thought it might be remedied. Swan suggested Price might be interested in the Corniche. Price agreed to buy the Corniche, even though he preferred to have his money back. Cars Internationale gave Price the title to the Corniche, but Price did not take possession of the car for several months. Price testified he was still hoping to get his money back.

However, the evidence at trial established that in mid-February 2010, Price sent the dealership an e-mail asserting it had engaged in "criminal fraud." According to the e-mail, Cars Internationale sold Price's 2000 Silver Seraph and received money for it; "traded him into" a 2002 Silver Seraph and collected $16,450 from him; took the 2002 Silver Seraph back and never returned it; returned the 2002 Silver Seraph to the original owner without Price's approval; wrote him a bad refund check for $75,840; and when Price demanded a refund, the dealership gave him title to the 2000 Corniche and a bill of sale in the amount of $76,000 "as security for the soon return of my money." The e-mail asserted three weeks had passed and $76,000 had not been deposited in Price's attorney's trust account, as the dealership had promised. Price demanded that the dealership either return his money or immediately deliver the 2000 Corniche to him.

3

In March 2010, a Cars Internationale mechanic alerted Price that the dealership was attempting to sell the Corniche. Price then took possession of the car. Price turned the Corniche over to another dealer or reseller who gave him $60,000 for the car.[2] The reseller transferred the Corniche to another party to attempt a retail sale. Within a few weeks, police had impounded the car in California.

In April 2010, Price filed a complaint against Cars Internationale, Swan, and related individuals. In May 2010, Price filed an *in rem* complaint for "turn over," quiet title, and declaratory relief. Price sought a judicial declaration that he was the lawful owner of the car. Subsequently, Price sought and received a trial court order releasing the Corniche to Price's counsel. In early June 2010, Swack filed a cross-complaint in the *in rem* action, alleging causes of action for conversion and quiet title. Swack filed an amended complaint later that month which included a claim for replevin. After Price's failure to post a bond so that the Corniche could remain in his counsel's custody, the car was instead stored at a "neutral party storage facility." The parties filed competing motions for summary adjudication regarding ownership of the Corniche. According to representations made in Swack's motion, "[c]ounsel agreed that they would file cross-motions for summary adjudication to be heard July 29, 2010, and that the side that then prevails will take possession of the car." After the court granted Price's motion for summary adjudication, it declared Price the owner of the Corniche, but upon Swack's motion for an order restraining Price from selling the car until a motion for reconsideration was heard, the court issued an order restraining any sale of the car. In September 2010, the parties agreed Price would store the Corniche. In November 2010, the trial court granted Swack's motion for reconsideration and denied both motions for summary adjudication.

---

[2]    Price testified he never negotiated the $60,000 check because he still hoped he would be able to "get the money."

The court conducted a bench trial in late January 2013. Both Price and Swack sought a determination of the ownership of the car. Swack additionally sought $594,000 in loss of use damages, calculated as the reasonable rental value of the Corniche for 33 months.[3] In a written ruling, the trial court concluded Swack was a bona fide purchaser of the Corniche in November 2009, and was the car's legal owner. As to Price, the court found the evidence established Price was on notice of Swan's willingness to lie and cheat customers, including Price. The court reasoned that based upon Price's knowledge "at the time he interrupted the sale of the [Corniche] to a different purchaser, and took possession himself to cover [Cars Internationale's] debt to him, the court finds that Price was not an 'innocent' bona fide purchaser for value, so the car belongs to Swack."

However, the court rejected Swack's claim of "damages for Replevin based upon his inability to use his car for the last 3 years while this case has been in litigation." The court explained: "Mr. Price did not possess the car when the case was initiated. In fact, the case was originally set to allow Mr. Price to recover the car that had been impounded due to the theft report. From that moment on, the court has been in constructive possession of the vehicle. Although Mr. Price has better access to the car, neither side has been entitled to use or operate the vehicle while it has been in the court's possession." The court entered judgment for Swack and further ordered: "The plaintiff [Price] is ordered to release the vehicle to Mr. Swack as part of the judgment at a mutually convenient time, but no later than March 31, 2013. All previously imposed conditions remain, until Mr. Swack takes possession of the vehicle." Swack timely appealed.

## DISCUSSION

**I.     The Trial Court Rejected Swack's Replevin Claim and Did Not Err in Denying Related Damages**

Swack's sole argument on appeal is the trial court erred in refusing to award him loss of use damages in connection with his replevin claim, which he now calculates as

---

[3]     Swack offered expert testimony that the rental value of a 2000 Rolls Royce in the Miami area was $18,000 to $20,000 per month.

5

$846,000. Swack asserts the trial court ruled in his favor on his replevin claim, but improperly declined to award him commensurate damages to which he was entitled. Price counters that the court did not, in fact, find Swack prevailed on the replevin claim. We conclude the trial court rejected Swack's replevin claim.

Florida law provides a statutory claim for replevin. Under Florida Statute section 78.01, "[a]ny person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property and any damages sustained by reason of the wrongful taking or detention as herein provided." The Florida Supreme Court has described the cause of action as follows: "The action lies to recover possession of personal chattels that are unlawfully detained, and for damages for the detention. And to sustain replevin the defendant must have actual or constructive possession or control of the property, and the plaintiff must be entitled to the immediate possession thereof when the action is brought." (*Evans v. Kloeppel* (Fla. 1916) 73 So. 180, 183 (*Evans*).)[4]

---

[4]    In the trial court, the parties agreed Florida law governed the dispute; they agree again on appeal that Florida law governs. We therefore need not consider the choice of law issue discussed in appellant's brief; to the extent any party could have contended California law applied the issue is forfeited. (*AICCO, Inc. v. Insurance Co. of North America* (2001) 90 Cal.App.4th 579, 595; *Riley v. Fitzgerald* (1986) 178 Cal.App.3d 871, [where party actively agreed in trial court that Texas law applied, party could not argue on appeal that California law applied].) Moreover, we agree that the law in Florida and California is the same in all aspects relevant to this case. (*Kearney v. Salomon Smith Barney Inc.* (2006) 39 Cal.4th 95, 107-108 [first step in choice-of-law analysis is to determine if the relevant law is the same or different in the affected jurisdictions].) Although in Florida the cause of action is called "replevin," in California the equivalent is an action for possession or recovery of personal property, known as an action for claim and delivery. (*Berry v. Bank of Bakersfield* (1918) 177 Cal. 206, 209 ["The action was one for the recovery of specific personal property, the code equivalent of common-law writ of replevin."].) As in Florida, the action is "to enforce plaintiff's right to the present possession of the chattels against a defendant who detains them without right . . . To sustain the action the plaintiff must have the right to the immediate and exclusive possession of the property at the commencement of the action. It is not essential that the plaintiff should be the absolute owner, provided he is entitled to the immediate possession." (*Commercial & Sav. Bk. v. Foster* (1930) 210 Cal. 76, 79.) The action is

6

In *Senfeld v. Bank of Nova Scotia Trust Co.* (*Cayman*) (Fla.App. 1984) 450 So.2d 1157, the court elaborated, while contrasting replevin with conversion: "It is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time . . . . [T]he essence of conversion is not the possession of the property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be, but is not always, shown by demand and refusal." (*Id*. at. pp. 1160-1161, fn. omitted.) "Unlike conversion, *the essence of an action for replevin is the 'unlawful detention of personal property from plaintiff at the commencement of the action*, regardless of whether defendant acquired possession rightfully or wrongfully . . . .' [Citations.] Thus, the cause of action for replevin first arises with the refusal to return the property upon demand." (*Id.* at p. 1161, fn. 5, italics added; see also *Brown v. Reynolds* (Fla. App. 2004) 872 So.2d 290, 294 (*Brown*).)

These authorities set forth two propositions relevant to this case. To establish a replevin claim, "the defendant must have actual or constructive possession or control of the property," (*Evans*, at p. 183), and there must be "unlawful detention of personal property from plaintiff at the commencement of the action." (*Brown, supra,* 872 So.2d at p. 294.) Similarly, Florida Jurisprudence Second explains with respect to the proper defendant in a replevin action: "A person who does not have either actual or constructive possession of the goods or chattels sought in replevin is neither a necessary nor a proper party defendant in a replevin action even though he or she claims an interest in the property." (12 Fla.Jur.2d (2014) Conversion and Replevin, § 56.) A Florida treatise likewise explains: "The person who has actual or constructive possession of the property is the proper defending party. If the property has been taken by a sheriff, he is the proper defending party, not the person who caused the sheriff to take possession of it."

distinct from conversion: An action for the possession of personal property "lies for the recovery of the property itself, with damages for the wrongful detention of it," while an action for conversion lies "for the recovery of damages for the wrongful conversion of [personal property]." (*Peterson v. Sherman* (1945) 68 Cal.App.2d 706, 711.)

7

(Trawick, Fla. Prac. & Proc. (2011-2012 ed.) § 34:1; see also *Main v. Miami Money Store, Inc.* (Fla.App. 1995) 655 So.2d 148, 149-150 (*Miami Money Store*) [statute authorizing action for replevin and attorney fees against a secondhand dealer in possession of stolen goods did not apply where city had seized diamond from store and secondhand dealer was neither in actual, physical possession  of diamond, nor had constructive possession of diamond]; *Brescher v. Associates Financial Services Co., Inc.* (Fla.App. 1984) 460 So.2d 464, 465-467 [after default by debtor, secured party may seek replevin from sheriff who has taken possession of the property under valid execution].)[5] These propositions concern the essential elements of a replevin claim—not the question of permissible damages flowing from a successful replevin claim.[6]

---

[5]    Henry P. Trawick Jr.'s Florida Practice and Procedure is a commonly cited authority in Florida courts on general principles of Florida procedure and practice.  (See e.g., *S.W. Florida Paradise Prop v.Warner* (Fla.App. 2013) 111 So.3d 268; *Guarantee Ins. Co. v. Worker's Temp. Staffing, Inc.* (Fla.App. 2011) 61 So.3d 1233, 1235, fn. 2; *Myers v. Myers* (Fla.App. 1995) 652 So.2d 1214, 1216.)  Likewise, Florida Jurisprudence Second has been described as "the standard Florida legal encyclopedia[.]"  (*Pino v. Bank of N.Y. Mellon* (Fla.App. 2011) 57 So.3d 950, 956, dis. opn. of Polen, J.)

[6]    See also 66 American Jurisprudence Second (2014) Replevin, section 18: "An action of replevin can be maintained only against one in actual or constructive possession of the property sought to be recovered at the time of the commencement of the action.  A party demanding possession cannot maintain a replevin action against a defendant who, at the time the action is instituted, is not in possession of or cannot exercise control over the property sought.  Thus, replevin cannot be maintained where the property has been delivered to a third party. . . . The reason for the rule that the property must be in the possession of the defendant is that the defendant, if judgment is rendered against him or her, must deliver the property to the plaintiff.  In other words, replevin lies only against a person from whose possession the sheriff can take the property and to whose possession it can be returned, and accordingly, an action is not maintainable against one who, prior to the institution of the action, was deprived of the possession of the property by legal process."  In addition, see *Law v. Heiniger* (1955) 132 Cal.App.2d Supp. 898, 899-900 [action to recover possession of personal property will not lie unless at the time the action is commenced defendant has possession of the property or the power to deliver it, unless defendant wrongfully gave possession to another].)

As such, we understand the trial court's conclusion that Swack was not entitled to replevin damages because Price did not have constructive possession of the Corniche to be a rejection of the replevin claim itself.[7] As Swack acknowledges, "[t]he meaning of a court order or judgment is a question of law within the ambit of the appellate court." (*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1429, citing *Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205 (*Mendly*).) " 'The true measure of an order . . . is not an isolated phrase appearing therein, but its effect when considered as a whole. [Citations.] In construing orders they must always be considered in their entirety, and the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing. If the language of the order be in any degree uncertain, then reference may be had to the circumstances surrounding, and the court's intention in the making of the same.' [Citations.]" (*Mendly,* at pp. 1429-1430.)

In addition, "[o]n appeal, a judgment of the trial court is presumed to be correct. [Citation.] Accordingly, if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning. [Citations.] All intendments and presumptions are made to support the judgment on matters as to which the record is silent. [Citation.] We presume the trial court followed applicable law. [Citation.] When no statement of decision is requested and issued, we imply all findings necessary to support the judgment." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

With these principles in mind, we must reject Swack's interpretation of the trial court's ruling. Swack insists the trial court "granted replevin," but inexplicably denied loss of use damages based on an incorrect theory that a lack of possession disentitled

---

[7] With respect to the terms "replevin" and "damages," the court's language in its written ruling was as follows: "Mr. Swack is seeking damages for Replevin based upon his inability to use his car for the last 3 years while this case has been in litigation. The court will not award such damages. Mr. Price did not possess the car when the case was initiated." As set forth in full in our factual recitation, the court then analyzed Price's lack of actual or constructive possession of the Corniche.

Swack to such damages, even though Swack prevailed on the essential elements of the claim. We find the far more reasonable interpretation of the order is that the court in fact rejected the replevin claim itself. As explained above, under Florida law, a replevin action cannot be sustained against a defendant who does not have actual or constructive possession of the property to be replevied when the action is commenced. The trial court's analysis focused on Price's lack of actual or constructive possession. The above Florida authorities indicate the defendant's lack of actual or constructive possession of the property to be replevied bars a plaintiff from sustaining a replevin claim against that defendant. Thus, when considered as a whole, it is clear the trial court was in fact rejecting the replevin claim itself, and it did not grant the replevin claim but deny attendant damages. The court's conclusion was consistent with the above authorities, which explain that a replevin action cannot be sustained against a defendant who does not have actual or constructive possession of the property to be replevied when the action is commenced.

We note substantial evidence supported the trial court's conclusion that at the time the action was commenced, Price did not have actual or constructive possession of the Corniche. Price instituted the legal proceedings precisely because he had been deprived of actual and constructive possession of the Corniche when law enforcement in California impounded the car. After the car was impounded, Price did not have actual or constructive possession of the car, including at the time Swack amended his cross-complaint to add a replevin claim. While the Corniche was for a time released to Price's counsel, this was pursuant to court order and court-ordered restrictions.

Swack asserts Price's actions which led to police impounding the Corniche—taking possession of the car and turning it over to a reseller—were all that was needed to render him liable for replevin damages to Swack. This argument is inconsistent with Florida law. As explained above, to *sustain* a replevin claim against a defendant under Florida law, the defendant must have actual or constructive possession of the property at the commencement of the action. It was not enough that Price asserted an interest in the Corniche, or that Price took possession of the Corniche well before any litigation began.

10

(See *Miami Money Store, supra,* 655 So.2d at pp. 149-150; *Brown, supra,* 872 So.2d at p. 294.) As the court explained in *Bush v. Belenke* (Fla.App. 1980) 381 So.2d 315, 316, "in a replevin action, although possession by the defendant of the subject property is essential, actual manual possession is not necessary. It is sufficient if a defendant has constructive possession, that is has such control over the property that he may deliver the possession of it, if he so desires, as for example, where an agent holds property for his principal." Before any litigation, and before Swack asserted a replevin claim against Price, Price had lost actual and constructive possession of the Corniche. The car was first impounded, then subject to court orders, such that the evidence supported the court's determination that at no period relevant to the litigation was Price free to deliver possession of the Corniche to Swack.[8]

*Bringley v. C.I.T. Corp.* (Fla. 1935) 160 So. 680, does not suggest a different result. In *Bringley*, the plaintiff filed a replevin action against two individual defendants to recover possession of a vehicle. The defendants sought to substitute Bringley as a defendant on the ground that they were only bailees of the property and "claimed no title or right of possession to it except through Bringley." (*Id.* at p. 531.) Although a lower court granted the motion, and later found Bringley was entitled to possession of the vehicle at the time the action was instituted, the Florida Supreme Court concluded it was error to allow the substitution of Bringley. (*Id.* at p. 538.) The court's conclusion was based on the distinction between rights to possession and title or ownership. The court explained a "plaintiff must have a right to the present possession of the property at the time the action is commenced. A temporary right to possession may prevail against an

---

[8]     See also 66 American Jurisprudence Second (2014) Replevin, section 20: "As a general rule, a replevin action for the recovery of the possession of a specific personal property is not maintainable where it appears that the defendant has lost or parted with the possession of the property prior to the institution of the action. This general rule has been conditioned on the showing of good faith of the defendant in parting with the possession of the property. Thus, where the defendant has in good faith parted with the possession of the property, the mere fact that he or she had had possession thereof is not sufficient."

11

absolute legal title to the property where that title and the right of immediate possession have become separated. [Citations.] [¶] . . . If the person in possession claims the right to such possession adversely to the asserted claim of a third person it in no wise affects the issue as between the defendant and the plaintiff who must establish his right to the immediate possession of the property. *So it is generally held that third persons who claim an interest in the property, but have no possession, are neither necessary nor proper parties defendant.* [Citations.] [¶]. . . [¶] . . . [W]hether Bringley was the owner of the property sought to be recaptured or not was not the question presented by the action brought as it related only to the plaintiff's right to the possession of it when the action was brought. By the substitution of Bringley as defendant the issue was sought to be shifted from the question *vel non* of plaintiff's right to immediate possession when the action was brought to a question of ownership of the chattel which was incidental only." (*Id.* at pp. 536-538, italics added.)

Thus, although Bringley had an ownership interest in the subject car he did not have possession of it, and therefore was not a proper defendant in the replevin action. While Swack correctly asserts the *Bringley* court indicated the focus of a replevin claim is on the plaintiff's right to immediate possession, he ignores that the issue to be decided was whether Bringley, as the alleged owner of the car but not its possessor, was a proper party in the replevin action. The *Bringley* court concluded he was not. Here, Price was in a similar position to Bringley. He asserted an ownership interest in the Corniche, but he could not deliver immediate possession to Swack because the car was no longer under his control. We can find no error in the trial court's rejection of the replevin claim.

Finally, Swack argues the court must have granted his replevin claim because Price was ordered to turn the car over to Swack. We disagree that this order mandates the conclusion that the trial court found Swack's replevin claim meritorious. The court quieted title in the Corniche, as both Swack and Price had requested. (See *Ellis v. Dixie Highway Special Road & Bridge Dist.* (Fla. 1931) 138 So. 374, 375 [under exceptional circumstances, quiet title may be used for personal property where there is no adequate remedy at law]; see e.g., *DGG Development Corp. v. Estate of Capponi* (Fla.App. 2008)

12

983 So.2d 1232, 1234-1235 [analysis of "bona fide purchaser for value" in connection with quiet title claim]; *Pacific American Ins. Co. v. Red Door Motors, Inc.* (Fla.App. 1986) 497 So.2d 721 [action to quiet title in a vehicle].) Under Florida law, a court may issue a judgment awarding possession of the property as relief in a quiet title action. (Fla. Stat. Ann. § 65.061(1); *Price v. Tyler* (Fla. 2004) 890 So.2d 246, 252 [by Florida statute, court has jurisdiction to enter judgment quieting title and awarding possession to the party entitled thereto]; see e.g., *Top Dollar Pawn Too, Inc. v. King* (Fla.App. 2003) 861 So.2d 1264, 1265 [trial court quieted title in car and authorized sheriff to give possession of it to successful plaintiff].) We assume the court's order that Price release the Corniche to Swack as part of the judgment was such an order.[9]

Under the circumstances of this case, we reject Swack's assertion that "[a] party who not only wants to clear title on property, but also get the property back, must resort to replevin rather than merely an action to quiet title." In a case such as this one, where there are two parties claiming exclusive ownership in the same property, they plead and seek to prove competing quiet title claims, but the court is in constructive possession of the property at the commencement—and for the duration—of the litigation, replevin against the other party seeking to quiet title in the property is not available. Swack could not "get the property back" from Price, since Price did not have actual or constructive possession of the Corniche. In a case such as this, an order awarding possession to the party in whom the court quiets title is appropriate.[10]

---

[9]    To the extent Swack now argues the trial court could not grant a quiet title claim, or remedies associated with a quiet title claim, because, as he states, "[u]nder Florida law, suits to quiet title to personal property may be brought only where, owing to exceptional circumstances, there is no adequate remedy law," he both invited any error by affirmatively pleading and prosecuting a quiet title claim, and forfeited any claim of error by failing to withdraw the claim or otherwise object. (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1528; *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 968-969.)

[10]    We also again note that, according to Swack's earlier representations in the record, in June 2010, "[c]ounsel agreed that they would file cross-motions for summary

13

In light of the requirements of a replevin action, it is apparent the trial court rejected the replevin claim, not simply one form of damages.  Substantial evidence supported the court's conclusions rejecting the replevin claim.  Swack demands that we construe the trial court's order and judgment so as to find error, when no such construction is warranted.  We decline to do so, consistent with the fundamental principal of appellate review that "[a] ruling by a trial court is presumed correct, and ambiguities are resolved in favor of affirmance."  (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) We thus find no error in the trial court's denial of loss of use damages in connection with the replevin claim.

### DISPOSITION

The trial court judgment is affirmed.  Respondent shall recover his costs on appeal.

BIGELOW, P.J.

We concur:

RUBIN, J.

GRIMES, J.

---

adjudication to be heard July 29, 2010, and that the side that then prevails will take possession of the car."  In the same motion, Swack represented: "Based on the stipulation of counsel, upon the granting of this motion, Mr. Swack will be entitled to possession of his car."  These representations suggest the parties had at least at one point agreed that once a judicial determination was made as to title and lawful ownership, the parties would forego further legal process in order to recover actual possession of the Corniche.

14